UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MAYRA F. PENA,
   PLAINTIFF

v.

C.A. No. 15-CV-00179-S-LDA

HONEYWELL INTERNATIONAL INC.,
   DEFENDANT.

### PLAINTIFF MAYRA PENA'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR cv 56 of the Local Rules of the United States District Court for the District of Rhode Island, Plaintiff Mayra Pena hereby sets forth this Statement of Undisputed Facts ("PSUF") in connection with her Opposition to Defendant Honeywell International Inc.'s Motion for Summary Judgment. Pena states that the following facts are undisputed:

1. In or about 2002, North Safety Products hired Pena as a "Machine Operator" and "Associate Assembler" as a temporary employee. (Pena Dep. at 15:3-20, 16:1-7).

2. In or about 2008, Defendant Honeywell acquired North Safety Products and retained Pena as an "Associate Assembler." (Pena Dep. at 15:3-20, 16:1-7; Ryan Dep. at 25:12-15).

3. Honeywell cross-trained employees so they would be able to work in the Molding Room on an as needed basis to account for unexpected exigencies (such as a worker being out, vacations, or an unexpected large order), rather than on a consistent basis. (Dyer Dep. at 41:3-20).

4. Workers in the molding department cannot control the flow of the work; the machines eject a new part every thirty seconds. (Ryan Dep. at 50:16-25, 51:1, 51:19-25).

5. In contrast, employees control the operation of the machines in the other departments. (Ryan Dep. at 50:16-25).

6. Because of this, some Honeywell employees indicated that they prefer to work in areas other than the molding department because they do not have to rush to keep up with the flow of the machines. (Ryan Dep. at 49:16-24; Dyer Dep. at 35:3-5; Gouveia Dep. at 36:20-37:25).

7. Employees have also expressed a dislike of the molding department because they have more opportunity to socialize in other departments. (Ryan Dep. 53:21-25, 54:1-7).

8. Pena typically worked in the respiratory department. (Ryan Dep. at 16:4-7; Ryan Dep. at 30:12-13, 37:16-38, 39:8-11).

9. In or about late February 2013, Pena told Ms. Fermin that she did not want to work in the Molding Room. (Gouveia Dep. at 37:10-12).

10. In February 2013, Pena told Gouveia that Fermin did not allow her to take breaks she needed because of her diabetes. (Ex. V).

11. In or about March 2013, Mayra Fermin, Pena's cell leader, again rotated Pena to the Molding Room. (Gouveia Dep. at 37:10-12).

12. On or about March 7, 2013, Mr. Gouveia met with Pena, Mr. Ryan and Mr. Dyer to discuss Pena's claim that she could not work in the Molding Room. (Ryan Dep. at 47:19-24).

13. Pena told Mr. Gouveia that she did not want to work in the Molding Room because "it was harmful to [her] emotionally." (Pena Dep. 43:21-24).

14. Honeywell knew that Pena had anxiety and depression (Ex. A-G, I; Gouveia Dep. at 67:5-6; Jennison Dep. at 24:2-10; Pena Aff.).

15. In fact, Pena had previously taken FMLA medical leaves for seasonal depression (Doc. No. 27-1 at 4, n.3); (Pena Aff.).

16. Pena explained to Mr. Gouveia that the Molding Room made her feel nervous and that she would get a doctor's note that confirmed this. (Gouveia Dep. at 38:25, 39:1, 41:3-5, 41:9-11, 42:8-11).

17. Pena obtained a note from her doctor, Dr. James Greer, dated March 4, 2013, and her husband delivered it to Honeywell on March 8, 2013. (Ex. A; Pena Dep. at 50:15-19; Gouveia Dep. at 48:5-7).

18. Dr. Greer's March 4, 2013 note stated:

    > Pena is a patient under my care at this agency where she has received counseling and medication services. Currently [Plaintiff] is reporting exacerbation of her anxiety symptoms which are interfering with her ability to function. She reports that these specifically occur when she is being sent to the molding room as opposed to the more typical duties to which she is accustomed. I am requesting that you assist her in other placements than in this setting as her condition is being directly exacerbated by working conditions there.
    > She is completely capable of working in other settings.

    (Ex. A).

19. Mr. Gouveia read the note and ascertained that Pena suffered from anxiety, which worsened when she was in the molding room. (Gouveia Dep. at 57:17-22, 58:4-8, 59:9-13).

20. Mr. Gouveia also understood from the note that Pena's doctor was requesting that she be placed elsewhere in the facility where she was capable of working. (Gouveia Dep. at 59:9-25, 60:1-3).

21. Dr. Elizabeth Jennison also reviewed the March 4, 2013 note. (Jennison Dep. at 22:18-23, 23:2-17).

22. Dr. Jennison understood from the letter that Pena was being treated for anxiety, which she knew to be a psychological disorder. (Jennison Dep. at 24:2-10).

23. Mr. Ryan, as Health and Safety and Environmental Site Leader, also reviewed Dr. Greer's March 4, 2013 note. (Ryan Dep. at 68:2-6, 70:12-17).

24. Mr. Ryan felt that the note was unacceptable and asked Pena to provide another note. (Ryan Dep. at 62:18-21, 68:13-15, 79:9-11).

25. Mr. Ryan and Mr. Gouveia informed Pena that the only work they had was in Molding, and if she couldn't do it then she could go home. (Ryan Dep. at 80:8-12; Gouveia Dep. at 64:8-11, 17-20).

26. Pena called her daughter to pick her up because she was unable to work in the Molding Room. (Pena Dep. at 52:18-53:2).

27. Pena never returned to the Honeywell Cranston facility after this day. (Gouveia Dep. at 64:9-20).

28. Mr. Gouveia provided Pena with a Reasonable Accommodation Request Form. (Pena Dep. at 59:17-60:2; Gouveia Dep. 70:24-71:3).

29. In April 2013, Pena submitted to Honeywell a letter from Dr. Greer dated April 2, 2013, and a Reasonable Accommodations Request Form. (Exs. B, I).

30. Pena completed her portion of the form, indicating that she was "unable to work in molding" because "the noise, speed, and overall environment gives [her] anxiety, palpitations [sic]" and requesting that she "continue to work in Heppa [sic], not molding." (Ex. I).

31. Rather than complete his portion of the form, Dr. Greer wrote a letter to Honeywell, stating:

> Pena presented me with a request for information regarding a "Reasonable Accommodation Request Form" which she is submitting. Pena has been a patient under my care at this agency since 2010, and has been involved in mental health treatment since approximately 2005. She carries diagnosis of Major Depressive Disorder, Recurrent, Severe. She receives both counseling services as well as medication management for this condition...
> With regards to her situation at work, she reports that she was functioning well in her previous position but when moved to a new one experienced significant increases in her level of stress which have had a notable negative impact on her condition. She is eager to return to work in her previous capacity but I can state with a reasonable degree of medical certainty that continued assignment to the more recent work setting will result in worsening stress and further exacerbation of her condition.

(Ex. B).

32. On April 2, 2013, Dr. Elizabeth Jennison wrote to Dr. Greer, noting that she did not understand how "Pena's anxiety symptoms could allow her to work in many areas of the plant, while interfering with her ability to function in one area of the plant, the molding room." (Ex. H).

33. On April 8, 2013, Mr. Gouveia wrote to Pena reiterating that Honeywell had communicated with Dr. Greer "to release [Pena's] medical records to [Honeywell's] medical department. (Ex. J).

34. On April 22, 2013, Mr. Gouveia again wrote to Pena, reminding her that she had "the option to return to work, including working in the injection Molding Department, or continue to stay out on an unpaid leave of absence." (Ex. K).

35. On April 23, 2013 Attorney Kot wrote to Attorney Rolfs asking for "any form and/or additional question or clarification you would like [Pena's] doctor to provide" and "a copy of Honeywell's policy and/or instructions for how requests for workplace accommodations should be handled" to ensure that Defendant had all the information it needed. (Ex. L).

36. Attorney Kot's letter also expressed objection to providing "all of [Pena's] senstivie medical records, including mental health records," as this amounted to an "unnecessary and prohibited intrusion upon [Pena's] privacy." (Id.)

37. Attorney Kot emphasized in her letter that Pena was "more than willing to perform work with accommodations as specified by her doctor." (Id.)

38. On April 30, 2013, Attorney Kot wrote to Attorney Rolfs to inform her that even though Dr. Greer had already provided Honeywell with two notes requesting a reasonable accommodation of Pena's disability, that he would provide a third. (Ex. M).

39. On May 6, 2013 Attorney Veronika Kot wrote to Jacqueline Rolfs as follows:

> Enclosed you will find the third letter from Pena's doctor, Doctor Greer. While each of his previous letters should have been sufficient to ensure Pena's reinstatement with accommodations for her disability, taken together there is no doubt that they provide ample information to answer all of Honeywell's' [sic] questions, as indicated on Honeywell's questionnaire regarding disability accommodations and/or in Honeywell's policies.
>
> Doctor Greer has clearly indicated the nature of the disability (depression and anxiety), its anticipated duration (indefinite) and the necessary accommodations (work in any of the other departments of Honeywell where Pena has successfully worked for the past 11 years)...

(Ex. N).

40. Attorney Kot's letter included a note dated April 29, 2013 from Dr. Greer again explaining that Pena:

> has reported repeatedly and consistently that she finds this new environment to be highly stressful, referencing a variety of factors which included increased noise levels, chemical odors and the presence of robotics in the molding room which have resulted in a significant exacerbation of her anxiety symptoms.

(Ex. C).

41. The note also included four progress notes dated March 4, March 12, March 18, and April 22, 2013 describing Pena's symptoms. (Ex. D-G).

42. The March 18, 2013 progress note indicates that Dr. Greer contacted Honeywell and left a message in an attempt to discuss Pena's condition with Defendant Honeywell. (Ex. F).

43. On May 22, 2013, Attorney Rolfs again rejected Pena's doctor's notes. (Ex. O).

44. On or about June 17, 2013, Defendant terminated Pena for job abandonment. (Ex. P).

45. Pena's psychiatrist Dr. Greer recommended that Pena file for SSDI benefits. (Pena Aff.).

46. Pena's SSDI lawyer advised her to use March 8, 2013, her last day of work, as the date of the onset of her disability. (Id.).

47. When Pena stated on her SSDI application that she was unable to work as of March 8, 2013, she meant that she was totally disabled only for the purposes of receiving SSDI benefits. The SSDI application did not ask if she needed any accommodations of a disability in order to work and no one at any of the hearings asked. Had she been asked, she would have responded, "Yes." (Id.).

48. Had Honeywell granted Pena's accommodation request, she would have gone back to work, and she would not have filed for SSDI benefits. (Id.).

49. Pena filed for SSDI benefits because she could no longer work due to her worsening depression, and she needed a source of income to pay her bills. (Id.).

                                        MAYRA PENA
                                        By Her Attorneys,

                                        /s/Mark P. Gagliardi
                                        Mark P. Gagliardi (#6819)
                                        mark@gagliardilaw.net

                                        /s/Alicia M. Connor
                                        Alicia M. Connor (#9515)
                                        alicia@gagliardilaw.net

                                        LAW OFFICE OF MARK P. GAGLIARDI
                                        120 Wayland Avenue, Suite 7
                                        Providence, RI 02906
                                        (401) 277-2030
                                        (401) 277-2021 (fax)

Dated: March 29, 2017

### CERTIFICATE OF SERVICE

I hereby certify that on this **29**th day of March 20**17**, I caused the foregoing document to be electronically filed with the Court's CM/ECF system. The following counsel-of-record have been served by electronic means.

    Neal J. McNamara
    nmcnamara@nixonpeabody.com

    Aaron F. Nadich
    anadich@nixonpeabody.com

    Nixon Peabody, LLP
    One Citizens Plaza, Suite 500
    Providence, RI 02903-1345

                                          /s/Mark P. Gagliardi