# EXHIBIT A

# United States Court of Appeals
## For the First Circuit

————————————

No. 16-1453

GLORIA M. ORTIZ-MARTÍNEZ,

Plaintiff, Appellant,

v.

FRESENIUS HEALTH PARTNERS, PR, LLC; FRESENIUS MEDICAL CARE
EXTRACORPOREAL ALLIANCE OF PUERTO RICO, INC.,

Defendants, Appellees.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

————————————

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

————————————

Isis Aimée Roldán Márquez for appellant.
Alfredo M. Hopgood-Jovet, Patricia M. Marvez-Valiente, and
McConnell Valdés LLC for appellees.

————————————

April 7, 2017

————————————

THOMPSON, **Circuit Judge**.   Appellant Gloria Ortiz-Martínez worked as a social worker for appellees Fresenius Health Partners, PR, LLC and Fresenius Medical Care Extracorporeal Alliance of Puerto Rico, Inc. (together, "Fresenius").[1]   After suffering a work-related injury, Ortiz-Martínez sued Fresenius for failing to accommodate her disability in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.   The district court granted summary judgment finding, first, that Ortiz-Martínez did not qualify as a "disabled" individual under the ADA and, second, that she was the cause of the breakdown in communications concerning her accommodations.   After careful consideration, we affirm the district court's ruling.

---

[1] In her complaint, Ortiz-Martínez stated that Fresenius Medical Care Extracorporeal Alliance of Puerto Rico, Inc. was her employer and that the company's name was later changed to Fresenius Health Partners Puerto Rico, LLC.  In its answer to her complaint, Bio-Medical Applications of Arecibo, Inc. stated that it was served by Ortiz-Martínez in the underlying action, that Ortiz-Martínez erroneously named the company as Fresenius Health Partners Puerto Rico, LLC, and that Bio-Medical Applications of Arecibo, Inc. had been Ortiz-Martínez's sole employer during all relevant times to the underlying action.  Ortiz-Martínez did not dispute this fact below, nor on appeal, and the parties agreed that her proper employer was Bio-Medical Applications of Arecibo, Inc.  Although Bio-Medical Applications of Arecibo, Inc. stated that it would correct the caption of the case by separate motion, no such motion was ever filed.  Instead, Bio-Medical Applications of Arecibo, Inc. continued to refer to itself as "Fresenius" before the magistrate judge and once again on appeal.  To avoid any confusion we continue to refer to Bio-Medical Applications of Arecibo, Inc. as "Fresenius."

- 2 -

**Background**

The case facts are largely undisputed and we summarize them in the light most favorable to the appellant.  See Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 17 (1st Cir. 2002).

On January 25, 2010, Ortiz-Martínez was hired as a social worker at Fresenius, a health care services provider that administers dialysis treatment to patients with kidney disease or impaired renal function.  As part of her duties, Ortiz-Martínez was required to regularly write and document various aspects of her work, including documenting all interventions and services she rendered to patients, and completing a monthly report for each patient under her care.  During the course of her employment, Ortiz-Martínez suffered a hand injury while preparing written notes in her patients' files.

Ortiz-Martínez subsequently went to see a doctor with the State Insurance Fund ("SIF") on July 30, 2012 regarding her work-related injury and was placed on rest until August 9, 2012.  Ortiz-Martínez went back to the SIF for several follow-up appointments over the course of the next year, and each time she was placed on additional rest and not permitted to return to work.  Following a doctor's appointment on July 12, 2013 where the doctor once again extended Ortiz-Martínez's order of rest until July 22, 2013, Ortiz-Martínez returned to the SIF five days later (on July 17, 2013) to inquire about returning to work while she continued

treatment for her injury.  Her doctors agreed that she could return
to work while continuing her treatments and, with the blessing of
her doctors, she reported in on July 18, 2013.

Upon her return, Ortiz-Martínez provided her supervisor
and Clinical Manager, Priscilla Ortiz ("Priscilla"),[2] with a copy
of the SIF form which indicated that Ortiz-Martínez had been
diagnosed with a sprained left shoulder, arm, forearm, and hand,
as well as bilateral carpal tunnel syndrome.  The SIF form also
indicated that after her medical examination on July 17, 2013,
Ortiz-Martínez was cleared to return to work while she continued
to receive medical treatment for her injuries.  The SIF form did
not indicate what specific accommodations were necessary to assist
Ortiz-Martínez in the completion of her daily tasks while
continuing treatments for her injury.

Accordingly, Priscilla informed Ortiz-Martínez that
without more information regarding Ortiz-Martínez's medical
restrictions and what specific accommodations she was requesting,
Fresenius would not be able to reinstate her.  That same day (July
18, 2013), Ortiz-Martínez returned to the SIF in an effort to
obtain the additional information requested by Priscilla.  The SIF
provided Ortiz-Martínez with a letter that, in pertinent part,
stated the following:

_____

[2] In order to avoid confusion, we refer to Priscilla Ortiz by
her first name -- no disrespect is intended.

- 4 -

The following diagnosis was made at our
agency: Sprained Left Shoulder and Arm.
Sprained Left Forearm.  Sprained Left Hand,
Bilateral Carpal Tunnel Syndrome.  These
conditions produce constant pain, numbness in
[Ortiz-Martínez's] upper extremities, and
difficulty in performing the activities that
require exercising force or pressure in the
affect [sic] area.

Dr. Miguel Rivera-González, Occupational
Physician who is in charge of the case,
recommends that this employee be provided with
an occupational adjustment.  The medical
evidence shows that Mrs. Ortiz[-Martínez] has
difficulty in performing repetitive tasks,
lifting, holding and manipulating heavy and
large objects for a prolonged length of time.
She also has difficulty in holding, pulling,
gripping and she shows problems related to
restriction of movement and strength in her
left hand.  Because of this condition, she is
a candidate for surgery in the left hand,
which is pending.

According to the medical recommendations, we
suggest that the possibility of providing this
employee with the necessary adjustments be
considered, so that she may be able to perform
her duties without worsening her health
condition while she continues to receive
treatment through the State Insurance Fund
Corporation.  Furthermore, we recommend giving
her short rest periods during her workday.

Ortiz-Martínez returned to Fresenius that same day and

provided the SIF letter to Priscilla.  Priscilla told Ortiz-

Martínez that the letter "didn't tell her anything," but that

Fresenius would evaluate the letter and get back to her.  This

would prove to be the second to last time that Ortiz-Martínez and

Fresenius had a meaningful engagement to discuss her

accommodation.  One final meeting occurred in early August, which we discuss below.

While Ortiz-Martínez disputes the exact number of calls attempted by Fresenius in the aftermath of the July 18, 2013 meeting, she concedes that Fresenius did, in fact, attempt to get in touch with her on numerous occasions after that date to discuss her accommodation needs.  Indeed, the record indicates that after multiple failed attempts to reach Ortiz-Martínez by phone, Fresenius tried to reach her by letter.  In a July 26, 2013 mailing Fresenius informed Ortiz-Martínez that the company had unsuccessfully attempted to contact her via phone as early as July 23, 2013, that they were unable to leave her a message because her voicemail was not activated, and they requested that Ortiz-Martínez contact Fresenius within the next five business days to discuss how the company could best accommodate her injury.  Ortiz-Martínez claims that she did not receive the July 26, 2013 correspondence until August 6, 2013 and she could not remember whether she had made any effort to communicate with Fresenius between July 22, 2013 and August 6, 2013.

On July 26, 2013, however, despite Fresenius's attempts to contact her and despite her failure to communicate any further with the company, Ortiz-Martínez filed a complaint with the Equal Employment Opportunity Commission and on July 30, 2013 she filed

a complaint with the Anti-Discrimination Unit of the Puerto Rico Department of Labor.

On August 2, 2013, Ortiz-Martínez's union representative at Fresenius, Marcos Soto ("Soto"), telephoned Ortiz-Martínez to inform her that a Fresenius representative, Awilda Rodriguez ("Rodriguez"), had been trying to reach her via phone and mail. After the call, Ortiz-Martínez sent Soto a follow-up letter that confirmed that they had spoken that day, contended that she had no missed calls from Fresenius, and indicated that she had not yet located or received the July 26, 2013 letter from Fresenius. Even after learning from Soto that Fresenius was attempting to reach her to discuss her return to work, Ortiz-Martínez did not contact the company or attempt to further communicate her accommodation needs until August 6, 2013.

On that day, Ortiz-Martínez met with Soto, Rodriguez, and Priscilla to discuss her needed accommodations. The Fresenius representatives again informed Ortiz-Martínez that they needed more information concerning her medical restrictions in order to accommodate her injuries. Soto recommended that Fresenius contact the SIF in order to clarify Ortiz-Martínez's medical restrictions and the company agreed to do so.

True to their word, the very next day, Fresenius wrote to the SIF seeking clarification of the medical restrictions and

accommodations needed for Ortiz-Martínez.  The letter, addressed
to Ortiz-Martínez's doctor, read in relevant part:

> In the document you submitted for our
> consideration, you told us in general terms,
> that the employee has difficulty in performing
> certain tasks and movements.  Consequently, we
> are having difficulty evaluating what type of
> accommodations would be most appropriate for
> the employee.  To this end, we would ask that
> you provide us with more specific information
> regarding the recommended restrictions, such
> as the weight or amount in pounds that the
> employee may lift, the frequency and duration
> of the rest periods, the repetitive movements
> she must avoid, the specific limitations for
> grabbing, pulling or squeezing, among others
> that you may point out.

The letter also included a job description[3] for Ortiz-
Martínez's role and noted that her duties typically included
writing and documenting her work.  Fresenius never received a
response from the SIF or Ortiz-Martínez's doctors to the August 7,
2013 request and a month later, Fresenius sent Ortiz-Martínez yet
another letter detailing the additional information needed to
accommodate her injuries.  Specifically, the letter indicated that
Fresenius was "interested in continuing to have an interactive
process with [Ortiz-Martínez]," that Fresenius was unsuccessful in

---

[3] The job description detailed, in relevant part, that as a
social worker, Ortiz-Martínez was responsible for patient
assessments, care planning, and counseling.  Ortiz-Martínez was
responsible for "assess[ing] patients' psychosocial status,
strengths and areas of need that may affect rehabilitation."  And
her "day to day work include[d] desk and personal computer work
and interaction with patients, facility staff and physicians."

its attempts to reach her doctors at the SIF, and that they needed additional information including: the maximum weight she could lift; the frequency and duration of rest periods required; the kind of repetitive movements to be avoided; the kind of limitation for holding, pulling, and gripping; her capacity for using her left hand at the level required to perform her essential duties as a social worker; and any other specific recommendations that could be made.  Ortiz-Martínez claims that she never received this final letter, but admits she never again initiated any further communication with Fresenius concerning her accommodation requests after the August 6, 2013 meeting.  Ortiz-Martínez never returned to work at Fresenius and in April 2014 she filed suit alleging that Fresenius failed to accommodate her disability in violation of the ADA.

## Discussion

Having extensively laid out the undisputed facts in this case, Ortiz-Martínez's appeal can be easily dispatched.  We review the district court's grant of summary judgment de novo.  Carreras v. Sajo, García & Partners, 596 F.3d 25, 32 (1st Cir. 2010) (citing Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007)).

"The ADA provides 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d

76, 82 (1st Cir. 2008) (quoting <u>Katz</u> v. <u>City Metal Co.</u>, 87 F.3d 26, 30 (1st Cir. 1996)).  Indeed, "[t]he ADA was enacted for 'the elimination or reduction of physical and social structures that impede people with some present, past, or perceived impairments from contributing, according to their talents, to our Nation's social, economic and civil life . . . .'"  <u>Ramos-Echevarría</u> v. <u>Pichis, Inc.</u>, 659 F.3d 182, 186 (1st Cir. 2011) (quoting <u>Tennessee</u> v. <u>Lane</u>, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)).  To that end, the ADA "prohibits an employer from discriminating against a qualified person with a disability in regard to 'job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment' because of his or her disability or perceived disability."  <u>Id.</u> (quoting 42 U.S.C. § 12112(a) (1990)).

Under the ADA an employer is required to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on [its] operation of the business."  42 U.S.C. § 12112(b)(5)(A); <u>see also</u> <u>Rocafort</u> v. <u>IBM Corp.</u>, 334 F.3d 115, 119 (1st Cir. 2003) ("Under the ADA, 'an employer who knows of a disability yet fails to make reasonable accommodations violates the statute.'" (quoting <u>Higgins</u> v. <u>New</u>

- 10 -

Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999))).
To survive summary judgment on a failure-to-accommodate claim, a
plaintiff must prove that: "(1) he [or she] is disabled within the
meaning of the ADA, (2) he [or she] was able to perform the
essential functions of the job with or without a reasonable
accommodation, and (3) [his or her employer], despite knowing of
[his or her] disability, did not reasonably accommodate it."
Rocafort, 334 F.3d at 119; see also EEOC v. Kohl's Dep't Stores,
Inc., 774 F.3d 127, 131 (1st Cir. 2014).

     The district court found that Ortiz-Martínez failed to
establish the first and third prongs: namely, that (1) she is
disabled within the meaning of the statute; and (2) that her
employer failed to reasonably accommodate her when she was the one
responsible for the breakdown in the interactive process.  On
appeal, Ortiz-Martínez argues that the district court erred in its
findings.  Even if we assume the district court erred in concluding
that Ortiz-Martínez was not a disabled person, because we find
that Ortiz-Martínez was in fact responsible for the breakdown of
the interactive process, we affirm the district court's holding.

     "[A]n employee's request for accommodation sometimes
creates 'a duty on the part of the employer to engage in an
interactive process.'"  Kohl's, 774 F.3d at 132 (quoting Enica v.
Principi, 544 F.3d 328, 338 (1st Cir. 2008)).  The interactive
process, which varies depending on the circumstances of each case

nevertheless requires both the employer and employee to engage in a meaningful dialogue, in good faith, for the purpose of discussing alternative reasonable accommodations.  Id.  Once "a breakdown in the process has been identified, 'courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.'"  Enica, 544 F.3d at 339 (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996))).  If an "employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations." Id.

Ortiz-Martínez argues on appeal that Fresenius's request for additional information was excessive and unrelated to her work requirements as a social worker.  She also argues that she was not responsible for the breakdown in communication because she "manifested her desire to be reinstated after her disability-related leave of absence," Fresenius never offered her any sort of reasonable accommodation, and Fresenius never provided evidence that the letters it sent to the SIF were actually sent.  We disagree.

The burden is on Ortiz-Martínez to demonstrate in the first instance what specific accommodations she needed and how those accommodations were connected to her ability to work.  See

Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012)
("The obligation is on the employee to provide sufficient
information to put the employer on notice of the need for
accommodation. This means not only notice of a condition, but of
a 'causal connection between the major life activity that is
limited and the accommodation sought.'" (citations omitted)).
Notwithstanding this burden, here the record is rife with
uncontested facts demonstrating that Fresenius continually
attempted to engage in the interactive process in good faith, while
Ortiz-Martínez refused to meaningfully engage after submitting an
initial letter from her doctors on July 18, 2013 and attending a
meeting on August 6, 2013.

First, Fresenius's request for more specific information
was reasonable and important to determine the type of
accommodations Ortiz-Martínez required. How much weight Ortiz-
Martínez could support with her hands, the kind of movements that
she was to avoid due to her injury, and how long or frequently she
needed breaks throughout the day were directly relevant to the
accommodations she would need and her duties of daily desk and
personal computer work, while performing and documenting patient
assessments, care planning, and counseling. "An accommodation
request must be sufficiently direct and specific, and it must
explain how the accommodation is linked to plaintiff's
disability." Id. (citing Freadman v. Metro. Prop. & Cas. Ins.

- 13 -

Co., 484 F.3d 91, 102 (1st Cir. 2007); Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009)).  Fresenius's attempts to further clarify Ortiz-Martínez's requests and to seek specific information regarding her accommodation needs were not unreasonable, especially in light of her burden to explain how her specific accommodation requests were related to her disability and duties at work.

Ortiz-Martínez's remaining complaints are also without merit.  The mere fact that she expressed a desire to be reinstated does not demonstrate that she meaningfully engaged with the interactive process in good faith.  A declaration of a desire to return did not assist Fresenius in probing the contours of her physical limitations in order to fashion an appropriate accommodation and Fresenius's failure to offer her any type of accommodation due to a lack of sufficient information cannot be the basis of liability -- Fresenius committed no error in attempting to clarify her needs so that it could properly accommodate her.  We therefore conclude that Ortiz-Martínez's failure "to make reasonable efforts to help [Fresenius] determine what specific accommodations are necessary" caused the breakdown in the interactive process.  Enica, 544 F.3d at 339.  Consequently, her failure to cooperate in Fresenius's attempts to identify the proper accommodations precludes a finding that the company is liable for the failure to accommodate.  See Phelps v. Optima

- 14 -

Health, Inc., 251 F.3d 21, 27-28 (1st Cir. 2001) (where appellant failed to cooperate or actively engage in interactive process, employer could not be held liable for failure to accommodate).

Lastly, with regard to Ortiz-Martínez's argument that Fresenius never submitted proof that its letter to the SIF on August 7, 2013 or its final letter to Ortiz-Martínez on September 6, 2013 were actually sent, these arguments are deemed forfeited because Ortiz-Martínez failed to raise them before the district court. See Davila v. Corporacion De P.R. Para La Difusion Publica, 498 F.3d 9, 14 (1st Cir. 2007) (Finding that an argument was forfeited because "[t]he appellant did not present it to the district court.")  In any event, even if these two letters were not considered, the record is jam-packed with other instances of Fresenius's attempts to communicate and engage in the interactive process with Ortiz-Martínez.

### Conclusion

The district court correctly found Ortiz-Martínez responsible for the breakdown in communications and thus Fresenius cannot be held liable for its failure to accommodate.  We, therefore, **affirm** the district court's dismissal of her ADA claims.