## Exhibit List

| | |
|---|---|
| Ex. A: | First Doctor Letter:  Memo from Dr. Greer to Honeywell, dated March 4, 2013 |
| Ex. B: | Second Doctor Letter:  Memo from Dr. Greer to Honeywell, dated April 2, 2013 |
| Ex. C: | Third Doctor Letter:  Memo from Dr. Greer to Honeywell, dated April 29, 2013 |
| Ex. D: | Greer Progress Note, dated March 4, 2013 |
| Ex. E: | Greer Progress Note, dated March 12, 2013 |
| Ex. F: | Greer Progress Note, dated March 18, 2013 |
| Ex. G: | Greer Progress Note, dated April 22, 2013 |
| Ex. H: | Letter from Dr. Elizabeth Jennison to Mayra Pena, dated April 2, 2013 |
| Ex. I: | Honeywell Reasonable Accommodation Request Form, dated April 2, 2013 |
| Ex. J: | Letter from Jose Gouveia to Mayra Pena, dated April 8, 2013 |
| Ex. K: | Letter from Jose Gouveia to Mayra Pena, dated April 22, 2013 |
| Ex. L: | Letter from Atty. Veronika Kot to Atty. Jacqueline Rolfs, dated April 23, 2013 |
| Ex. M: | Letter from Atty. Veronika Kot to Atty. Jacqueline Rolfs, dated April 30, 2013 |
| Ex. N: | Letter from Atty. Veronika Kot to Atty. Jacqueline Rolfs, dated May 6, 2013 |
| Ex. O: | Letter from Atty. Jacqueline Rolfs to Atty. Veronika Kot, dated May 22, 2013 |
| Ex. P: | Termination Letter from Honeywell to Mayra Pena, dated June 17, 2013 |
| Ex. Q: | Application Summary for Disability Insurance Benefits, dated September 20, 2013 |
| Ex. R: | Letter from Atty. Jacqueline Rolfs to Atty. Veronika Kot, dated April 25, 2013 |
| Ex. S: | Letter from Atty. Jacqueline Rolfs to Atty. Veronika Kot, dated April 30, 2013 |
| Ex. T: | HLS Job Description/Responsibilities for Assembler Associate |
| Ex. U: | Honeywell's Position Statement re: RICHR #14EPD265-06/02, dated June 3, 2014 |
| Ex. V: | Note to File by Jose Gouveia |

# EXHIBIT "A"



Mental health
and substance
abuse care and
treatment services
for adults, children,
adolescents
and families

# MEMO

TO:     Honeywell Corporation

FROM:   James E. Greer, M.D.

RE:     Mayra Pena
DOB:    12/2/60

DATE:   3/4/13

TO WHOM IT MAY CONCERN:

Ms. Pena is a patient under my care at this agency where she has received both counseling and medication services. Currently she is reporting exacerbation of her anxiety symptoms which are interfering with her ability to function. She reports that these specifically occur when she is being sent to the moulding room as opposed to the more typical duties to which she is accustomed. I am requesting that you assist her in other placements than in this setting as her condition is being directly exacerbated by working conditions there.

She is completely capable of working in other settings.

I would be happy to provide more details should you require it.
Thank you.

JEG:pp
#1641900

520 Hope Street, Providence, RI 02906 • (401) 276-4000 • (800) 456-0300 • Fax: (401) 276-4571
www.providencecenter.org

HW 000063

# EXHIBIT "B"



**The
Providence
Center**

Mental health
and substance
use care and
treatment services
for adults, children,
adolescents
and families

## M E M O

TO:     Honeywell Corporation

FROM:   James E. Greer, MD

RE:     Mayra Pena
DOB:    REDACTED

DATE:   4/2/13

TO WHOM IT MAY CONCERN:

Ms. Pena presented me with a request for information regarding a "Reasonable Accommodation Request Form" which she is submitting. Ms. Pena has been a patient under my care at this agency since 2010, and has been involved in mental health treatment since approximately 2005. She carries diagnosis of Major Depressive Disorder, Recurrent, Severe. She receives both counseling services as well as medication management for this condition.

Given the continued presence of some symptoms despite these treatment interventions, it is to be expected that she will continue to experience some level of symptoms for the indefinite future.

With regards to her situation at work, she reports that she was functioning well in her previous position but when moved to a new one experienced significant increases in her level of stress which have had a notable negative impact on her condition. She is eager to return to work in her previous capacity but I can state with a reasonable degree of medical certainty that continued assignment to the more recent work setting will result in worsening stress and further exacerbation of her condition. I would be happy to provide further information should you require it.

Thank you.

JEG:pp
#1641900

720 Hope Street, Providence, RI 02906 • (401) 276-4000 • (800) 456-0300 • Fax: (401) 276-4571
www.providencecenter.org

# EXHIBIT "C"

05/06/2013  14:02   4014530310              RILEGALSVCS                    PAGE  04/08



**The Providence Center**

# MEMO

Mental health
and substance
use care and
treatment services
for adults, children,
adolescents
and families

TO:        Veronica Kot
           Rhode Island Legal Services
FAX:       453-0310

FROM:      James E. Greer, M.D.

RE:        **Myra Pena**

DATE:      April 29, 2013

I'm writing to clarify the concerns I expressed about Ms. Pena's ongoing stress related to new duties she was recently assigned to in the workplace.   Ms. Pena has worked for the **HONEYWELL** Corporation for 11 years prior to February of 2013 when she was assigned a new work setting in the molding room.   She has reported repeatedly and consistently that she finds this new environment to be highly stressful, referencing a variety of factors which included increased noise levels, chemical odors and the presence of robotics in the molding room which have resulted in a significant exacerbation of her anxiety symptoms.   More recently the stress of this issue has also resulted in worsening of her depression.

As I am not conversant with the make-up of the molding room area, I cannot specifically identify particular issues there which might exacerbate her stress, but can state within a reasonable degree of medical certainty that there is a direct causal relationship between her working in that setting and the exacerbation of her symptoms.

                                                    James E. Greer, M.D.

/bem
1641900

520 Hope Street, Providence, RI 02906 • (401) 276-4020 • (800) 456-0300 • Fax: (401) 276-4571
www.providencecenter.org

MayPro2629 07:10 AM TPC 4012276-4171
1/1                                                                                       0000055 MH

# EXHIBIT "D"



## Progress Note (MD/CNS)

| | The Providence Center | Client Name | MAYRA PENA | | |
|---|---|---|---|---|---|
| | | Client Number | 1641900 | | |
| | | Date of Birth | REDACTE | Age: | 52 |

| Date of Scheduled Appt. | 03/04/2013 | Start time: 3:00 PM | End Time: 3:30 PM |
|---|---|---|---|

**Chief Complaint and history of present illness:**

Depression

### DATA

Pt in reporting that she has been doing better with depression but has been experiencing worsening anxiety/panic symptoms associated with changes in work setting in her company. I wrote letter to Honeywell requesting they not place here there but noted she is capable of functioning in other settings.

### ASSESSMENT

Situational stress

### PLAN

RTC 3 months  Medication dosage change and/or prescribed a new medication.

Progress Note (MD/CNS)
Form 615
Revised 3/1/2013

| | Signature and credentials | Date |
|---|---|---|
| Approved by: ☒ 00009, JAMES GREER, MD | | 03/04/2013 |





HW 000056

# EXHIBIT "E"

### Progress Note (MD/CNS)

The Providence Center

| | |
|---|---|
| Client Name | MAYRA PENA |
| Client Number | 1641900 |

| Date of Birth | REDACTED | Age: | 52 |
|---|---|---|---|

| Date of Scheduled Appt. | 03/12/2013 | Start time: 6:30 PM | End Time: 7:00 PM |
|---|---|---|---|

**Chief Complaint and history of present illness:**

Depression

### DATA

### ASSESSMENT

Pt in after 1 week, reporting that she gave employer her letter who rejected it, reportedly wanting unnecessary details of her condition. Agreed I would call supervisor Kevin Dyer and discuss her situation without going into excessive detail, as well as my opinion that the current position may result in her going out on workers' comp. Release signed

### PLAN

. Continue current medications and treatment plan.

Progress Note (MD/CNS)
Form 815
Revised 3/7/2013

| | Signature and credentials | Date |
|---|---|---|
| Approved by: | 00009, JAMES GREER, MD | 03/12/2013 |







HW 000057

# EXHIBIT "F"

05/06/2013  14:02    4014530310          RILEGALSVCS                    PAGE   07/28
May. 6. 2013 11:39AM                                         No.9475   P. 5
Page 1 of 1



### Progress Note (MD/CNS)

| | |
|---|---|
| Client Name | MAYRA PENA |
| Client Number | 1641900 |
| Date of Birth | REDACTED    Age: 52 |

| Date of Scheduled Appt. | 03/18/2013 | Start time: 9:40 AM | End Time: 10:10 AM |
|---|---|---|---|

**Chief Complaint and history of present illness:**

Depression

### DATA

Pt reports increased stress associated with lack of resolution of work situation, presents as highly anxious and increasingly labile. Called HR dept at Honeywell and left message.

### ASSESSMENT

Situational stress exacerbating depressive and anxiety symptoms

### PLAN

Continue to support reduction of stress in workplace Continue current medications and treatment plan.

| Progress Note (MD/CNS) Form 615 Revised 3/1/2013 | Signature and credentials | Date |
|---|---|---|
| | Approved by: ▨ 00009, JAMES GREER, MD | 03/18/2013 |





HW 000058

# EXHIBIT "G"

05/06/2013 14:02 4014530310 RILEGALSVCS PAGE 08/08
May. 6. 2013 11:39AM No. 9475 P. 6
Page 1 of 1

| **The Providence Center** | Client Name | MAYRA PENA | **Progress Note (MD/CNS)** | | |
|---|---|---|---|---|---|
| | Client Number | 1641900 | | | |
| | Date of Birth | REDACTED | | Age: | 52 |

| Date of Scheduled Appt. | 04/22/2013 | Start time: | 12:00 PM | End Time: | 12:30 PM |
|---|---|---|---|---|---|

**Chief Complaint and history of present illness:**

Depression

**Family and Social History:**

## DATA

Pt in reporting that she has been more depressed, reporting frequent episodes of tearfulness, feeling hopeless. She is still not working and has no income. She presents letter form employer stating they have not yet received records, called and discussed with HIS, she will go there to clarify request, they will send records today Appearance: reasonably dressed; Affect: constricted; Behavior: calm; Mood: depressed; Speech: Coherent; Thought Content: denies delusions ; , denies hallucinations . ; denies suicidal ideation. denies homicidal ideation.

## ASSESSMENT

Depression worsened by situational stress

## PLAN

RTC 8 weeks Counseling and or care coordination was provided: . Continue current medications and treatment plan.

| Progress Note (MD/CNS) Form 815 Revised 4/11/2013 | Signature and credentials | Date |
|---|---|---|
| | Approved by: 階 00009, JAMES GREER, MD | 04/22/2013 |





HW 000059

EXHIBIT "H"

April 2, 2013

Dr. James E. Greer, MD
The Providence Center
520 Hope St.
Providence, RI 02906
Via FAX: (401) 276-4571

RE: Myra Pena

Dear Dr. Greer:

On March 3, 2013 you sent a letter to our Cranston, RI facility requesting that your patient, Myra Pena not have to work in the "moulding room as opposed to the more typical duties to which she is accustomed." You cited that Ms. Pena has an "exacerbation of her anxiety symptoms which are interfering with her ability to function."

We need additional documentation to understand the medical necessity for this request. Ms. Pena routinely works in several areas of the facility, including the moulding room, so the moulding room would, in fact, be considered part of her typical duties. In an interview with her supervisor on February 21, Ms. Pena was asked directly if she felt that she had been properly trained to perform the jobs in the molding room, and she indicated that she had. When asked if she know how to perform the molding room job, she replied "yes". Ms. Pena indicated just that she does not like the molding room job and will refuse to perform it. Please note that Ms. Pena has performed the molding job satisfactorily on multiple occasions.

Can you please clarify how Ms. Pena's anxiety symptoms could allow her to work in many areas of the plant, while interfering with her ability to function in one area of the plant, the molding room, for which she is equally qualified and trained? Please provide documentation from your medical records that support this opinion.

You may provide this information to me in any format that is convenient for you.
> Elizabeth A. Jennison, MD
> Associate Director, Health Services
> Honeywell International
> 101 Columbia Rd., Solvay-4
> Morristown, NJ 07960
> FAX: 973-455-4416

Thank you for your assistance in this matter. If you have any questions, I can be reached at 973-455-3306.

Sincerely,

Elizabeth A. Jennison, MD, MPH
Associate Director, Health Services, Honeywell International

# EXHIBIT "I"

## Appendix 1

### *Reasonable Accommodation Request Form*

This form and any other documentation provided pursuant to this policy or the interactive
process must be maintained in a secure, separate file, such as the medical file.

Under the Americans with Disabilities Act, an individual is eligible for a reasonable
accommodation if (1) he/she is qualified to perform the essential functions of the
employment position and (2) he/she has a qualifying disability that limits a major life
function.  You must provide written documentation from a medical provider verifying
your disability and need for accommodation in addition to the information requested on
this form.

### Employee Information

| Name<br>Myra Pena | EID<br>E429816 |  |
|---|---|---|
| Job Title<br>Assembler Associate I | Department<br>Integrated Supply Chain |  |
| SBG/SBU<br>ACS/HLS | Location<br>Cranston, RI |  |
| Telephone<br>401 521 1914 | Email<br>N/A |  |
| Supervisor's Name<br>Kevin Dyer | Telephone<br>401 275 2438 | Fax |

1.) Describe the limitations your disability places on your ability to perform your job.
   Please identify the job functions it affects and how it limits you.

   Unable to work in molding. The noise, speed
   and overall environment gives me anxiety,
   palpitations.

2.) Describe the accommodation you are requesting.

   Continue to work Heppa, Not molding.

3.) How will this accommodation assist you in performing the essential functions and
   requirements of your job?

   I have performed the requirements of my
   job in Heppa without any problems. Even
   I had been offered many permanent
   positions in molding while still working
   through an agency and refused because I
   knew 11 years ago that I could not perform this job

HW 000064

## Information from the Physician

Your physician must produce a brief statement within fifteen days from your request to Honeywell that describes:

1.) The nature and severity of your impairment that is the reason for the accommodation request.

2.) A statement regarding the expected duration of the impairment and the expected duration of the need for accommodation.

3.) A statement describing which, if any, of the essential functions of your position you cannot perform due to your impairment. [Note to employee: Obtain a list of essential job functions from your supervisor].

4.) A statement describing any suggestions that your physician has for accommodations that may enable you to perform essential job functions affected by your impairment.

Information from you and your physician concerning your medical condition will be maintained in a confidential file and not in your personnel file.

The purpose of this form is to gather initial information about your request for reasonable accommodation. The Company will engage in an interactive process with you to determine whether a reasonable accommodation is required, and if so, what accommodation is appropriate. Filling out this form does not guarantee that the requested accommodation will be provided. The Company's decision to grant you an accommodation does not mean the Company agrees that you have a disability.

Mayra Peña
Employee Name

Signature

Work Telephone

4/2/13
Date

# EXHIBIT "J"

**Honeywell**

April 8, 2013

To:   Myra Pena
From: Honeywell, Human Resources Department Cranston, RI
RE:   Your Request for Reasonable Accommodation

Dear Myra,

We have recently received your reasonable accommodation request with your portion filled out and another letter from your physician, Doctor James E. Greer MD, stating you could not work in the Injection Molding Department.

We have communicated to you about this process, and we have also communicated to your physician, in writing, to release your medical records to our medical department. You have informed us you signed a release to give your physician permission to send your medical records to our medical department; however, not medical records have been received. As a result, and at the moment, we have insufficient information to assess your request.

While we await the medical information required to assess your request, you have the option to return to work and perform your regular job (including the rotations in the Injection Molding Department required of all employees in your position); or, remain on an unpaid medical leave of absence; or, use any paid time off that is available for you, such as vacation or PTO.

Upon receiving this letter, please let me know what option is favorable to you, and do not hesitate to contact me should you have any questions.

Regards,

Joe Gouveia
Sr. HR Generalist - Cranston, RI
401 275 2503

# EXHIBIT "K"

**Honeywell**

April 22, 2013

To:    Myra Pena
From:  Honeywell, Human Resources Department Cranston, RI
RE:    Reasonable Accommodation Request/Employment Status

Dear Myra,

We have recently sent you a letter outlining what we need from your physician to assess your request for reasonable accommodation. We have not received any information from your physician up to the current date.

In the same letter you were also notified of the option to return to work, including working in the Injection Molding Department; or, continue to stay out on an unpaid leave of absence.

At your earliest convenience, please let us know if your physician is providing the information previously requested; and, if you intend to return and work in the Injection Molding Department.

Regards,

Joe Gouveia
Sr. HR Generalist  Cranston, RI
401 275 2503

HW 000069

# EXHIBIT "L"

## RHODE ISLAND LEGAL SERVICES, INC.

56 Pine Street, Suite 400   50 Washington Square
Providence, RI 02903   Newport, RI 02840
(401) 274-2652   (401) 846-2264
(800)662-5034   (800)637-4529
FAX (401) 453-0310   FAX (401) 848-0363

BY FACSIMILIE

April 23, 2013

Jacqueline Rolfs,
Chief Human Resources Attorney
Honeywell International Inc.
1985 Douglas Dr
Golden Valley. MN 55422

Dear Ms. Rolfs:

This is in response to your letter, faxed yesterday to my office, and reiterates the
voicemail I left for you today. As you know our office is assisting Ms. Pena with her
request for accommodations in the workplace. It is my understanding that Ms. Pena has
already submitted two clear letters from her doctor specifying what she needs. She also
filled out and returned an accommodation request form.

In response she received a letter demanding a release of all her sensitive medical
records, including mental health records, signed by Mr. Gouveia. This of course
represents an unnecessary and prohibited intrusion upon her privacy.

Please fax to my attention:
1) any form and/or additional question or clarification you would like her doctor to
provide;
2) a copy of Honeywell's policy and/or instructions for how requests for workplace
accommodations should be handled.

I am very concerned that Ms. Pena has already been out of work for weeks despite
being more than willing to perform work with accommodations as specified by her
doctor. Therefore please respond immediately.

Sincerely,

Veronika Kot
Staff Attorney

LSC

# EXHIBIT "M"

04/30/2013  15:03    4014530310          FILEGALSVCS                    PAGE  02/02

## RHODE ISLAND LEGAL SERVICES, INC.

55 Pine Street, Suite 400   50 Washington Square
Providence. RI  02903       Newport, RI  02840
(401) 274-2652              (401) 846-2264
(800)662-5034              (800)637-4529
FAX (401) 453-0310          FAX (401) 848-0383

BY FACSIMILIE

April 30, 2013

Jacqueline Rolfs,
Chief Human Resources Attorney
Honeywell International Inc.
1985 Douglas Dr

Golden Valley. MN 55422

Dear Attorney. Rolfs:

This is in response to your letter of April 25th to which I will respond later in greater
detail.

As I said in my voice message to you today, we will be providing you shortly with a *third*
letter from her doctor.

Suffice it to say for the moment that your threat to terminate Ms. Pena if she doesn't
return to work without accommodations, despite those recommended by her treating
physician in two previous letters, is a violation of the ADA. It appears that Honeywell
simply doesn't like the physician's recommendations and is intent on forcing Ms. Pena
out of her employment either by making her quit or by forcing her into a situation which
would result in a serious mental health break down on the job.

Moreover, it bears noting that at no time has Ms. Pena — or her doctor — refused to
cooperate in providing requested information, as implied in your letter. In fact,
adequate information has already been provided. However, as noted earlier, the doctor
will shortly be providing a third letter to reiterate his recommendations, yet again.

Sincerely,

Veronika Kot
Staff Attorney

LSC

# EXHIBIT "N"

## RHODE ISLAND LEGAL SERVICES, INC.

56 Pine Street, Suite 400   50 Washington Square
Providence, RI 02903        Newport, RI 02840
(401) 274-2652              (401) 846-2264
(800)662-5034              (800)637-4529
FAX (401) 453-0310         FAX (401) 848-0383

BY FACSIMILIE and MAIL

May 6, 2013

Honeywell International, Inc
Jacqueline Rolfs,
Chief Human Resources Attorney
1985 Douglas Dr
Golden Valley. MN 55422

Dear Attorney Rolfs:

Enclosed you will find the third letter from Ms. Pena's doctor, Doctor Greer. While each of his previous letters should have been sufficient to ensure Ms. Pena's reinstatement with accommodations for her disability, taken together there is no doubt that they provide ample information to answer all of Honeywells' questions, as indicated on Honeywell's questionnaire regarding disability accommodations and/or in Honeywell's policies.

Doctor Greer has clearly indicated the nature of the disability (depression and anxiety), its anticipated duration (indefinite) and the necessary accommodations (work in any of the other departments of Honeywell where Ms. Pena has successfully worked for the past 11 years.) Please note that we are aware that there is in fact work available in these other departments and that most other employees – including until recently Ms. Pena –are not required to rotate into the Moulding Room.

Although not required to do so, as the Doctor's three detailed letters provide more than sufficient information from the treating physician, Ms. Pena is also providing pertinent medical visit records.

As indicated in my previous telephone calls and letters to you, we remain very concerned about Honeywell's handling of this matter. It appears that from the start when Ms. Pena indicated that new rotational work in the Moulding Room was exacerbating her medical condition and requested accommodation, she did not receive the appropriate support. Despite bringing in a doctor's note requesting the accommodation of not being rotated to this department due to the anxiety this particular environment caused, despite a many year history of successful work in all other assignments, and despite the availability of work in other departments, she was told to report back to the one setting that was causing her anxiety. When she broke down in tears she was told to go home. She has been home since then without pay, complying with all requests for additional information. Your statements about lack of cooperation notwithstanding, she has now provided three doctor's letters, a completed



HW 000053

questionnaire, and backup medical records.  Morevoer, as noted in his records, her doctor did call as requested, but never received a call back. It is also concerning that Ms. Pena's immediate supervisor, Mr. Gouveia, in a letter dated April 8, 2013, demanded that Ms. Pena "release your medical records to our medical department." This is an unnecessary intrusion on the privacy of sensitive mental health records and an impermissible condition on receipt of an already adequately documented need for accommodations -- as per both the ADA and your own policies.  It is also of concern that Ms. Pena has apparently been urged to quit and apply for SSI by Honeywell management, when she is in fact able and available for work -- with accommodation -- as she has been for the past many years.

I trust that with the information provided Ms. Pena will be promptly reinstated with the requested accommodation.

Feel free to contact me should you have any additional questions or concerns.

Sincerely,

Veronika Kot
Staff Attorney

LSC

EXHIBIT "O"

**Honeywell**

**Jacqueline R. Rolfs**
Chief Human Resources Attorney

**Automation and Control Solutions**
Honeywell International Inc.
1985 Douglas Drive
Golden Valley, MN  55422 USA
Phone:  763-954-6098
Fax:  763-954-6307
Email: jackie.rolfs@honeywell.com

**_SENT VIA FACSIMILE: 1-401-453-0310_**


May 22, 2013


Ms. Veronika Kot
Staff Attorney
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI 02903

Re:  Myra Pena

Dear Ms. Kot:

I write in response to your letter of May 6, 2013.  Unfortunately, the attachments to your letter consist largely of self reports by Ms. Pena, and do not provide any information as to why there is some connection between Ms. Pena's diagnosed depression and work in the molding room. Moreover, Dr. Greer has not called Honeywell's doctor, Dr. Jennison, as requested.  Instead, Dr. Greer called Kevin Dyer, a supervisor, though that is not is not the individual we asked that she call.

Contrary to certain assertions in your letter and attachments, all employees who work on the floor at this Honeywell facility will be required to rotate into molding as they complete the necessary training.  The rotations are as brief as 15 minutes, or as long as one week.  Ms. Pena and the other employees will rotate among all the areas in the facility, not just molding. Respiratory will remain as Ms. Pena's primary assignment.  The noise level in molding is not appreciably different than that in respiratory.  Indeed, employees in both areas are required to wear ear plugs.  Nor is there any difference in the chemical odors between respiratory and molding.  In addition, there are robotics in both molding and respiratory, and all are enclosed.

Mr. Gouveia's request for medical records related only to those records relevant to Ms. Pena's request for accommodation, and such a request is not overbroad or inappropriate.  Finally, no one at Honeywell has suggested that Ms. Pena quit and apply for SSI.

Ms. Veronika Kot
May 22, 2013
Page 2

Honeywell remains committed to working with your client to assess her reasonable
accommodation request.  It appears that, at this time, the most expeditious way to do that would
be for Dr. Greer to call Dr. Jennison to discuss the situation as soon as possible.  The information
that she is looking for is laid out in her letter of April 2 to Dr. Greer, attached hereto for your
convenience.  Her telephone number is included in that letter.

Sincerely,

Jacqueline R. Rolfs

JRR/fsm

att.

# EXHIBIT "P"

**Honeywell**

June 17, 2013

Ms. Mayra Pena
756 Manton Ave
Providence, RI 02909

Dear Ms. Pena:

You have been out of work since March 8, 2013 because of your assertion that you are unable to work in the molding room at the Cranston, RI facility. As you know, you, like the other employees at that facility, were trained to work in molding so that you can rotate from your regular assignment in respiratory to fill in for other employees from time to time. We have requested information regarding your request for a reasonable accommodation, but to date have not received the information identified by Dr. Jennison some time ago. Most recently, in a letter dated May 22, 2013, Honeywell Attorney Jacqueline Rolfs reiterated our request for information to your attorney. However, we have heard nothing from either you or your attorney in response. Consequently, Honeywell has no choice but to conclude that you have abandoned your employment. Your employment with Honeywell is terminated, effective immediately. You will receive information regarding COBRA health insurance continuation under separate cover.

Sincerely,

Jose Gouveia
Sr. HR Generalist
Cranston, RI
401 275 2503

HW 000109

# EXHIBIT "Q"

```
                                              September 20, 2013, 08:23
                                                               PAGE   1
        NH 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                        SG-SSA-16


                                       ---------------------
                                       : UNIT: D77          :
                                       :                    :
                                       :                    :
                                       :                    :
                                       :                    :
                                       :                    :
                                       :                    :
                                       ---------------------
```

MAYRA F PENA


APPLICATION SUMMARY FOR DISABILITY INSURANCE BENEFITS

On September 20, 2013, we talked with you and completed your application for
SOCIAL SECURITY BENEFITS. We stored this information electronically in our
records. We are enclosing a summary of your statements.

I APPLY FOR A PERIOD OF DISABILITY AND/OR ALL INSURANCE BENEFITS FOR WHICH I AM
ELIGIBLE UNDER TITLE II AND PART A OF TITLE XVIII OF THE SOCIAL SECURITY ACT,
AS PRESENTLY AMENDED.

MY NAME IS MAYRA F PENA.

I HAVE USED THE FOLLOWING NAME(S):
                MAYRA FELIPA PENA GONZALEZ

MY SOCIAL SECURITY NUMBER IS 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.

MY DATE OF BIRTH IS December 2, 1960.

I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON March 8, 2013.

I AM STILL DISABLED.

NO PREVIOUS APPLICATION HAS BEEN FILED WITH THE SOCIAL SECURITY ADMINISTRATION
BY OR FOR ME.

I HAVE FILED OR INTEND TO FILE FOR SSI.

I AM NOT ENTITLED TO NOR DO I EXPECT TO BECOME ENTITLED TO A PENSION OR ANNUITY
BASED IN WHOLE OR IN PART ON WORK AFTER 1956 NOT COVERED BY SOCIAL SECURITY.

THE SOCIAL SECURITY ADMINISTRATION AND THE STATE AGENCY REVIEWING MY CLAIM DO
HAVE MY PERMISSION TO CONTACT MY EMPLOYER(S).

I AM NOT MARRIED NOW.

I WAS PREVIOUSLY MARRIED TO DARIO ANTO OLIVO AQUINO ON January 17, 1986 IN DR
BY A CLERGYMAN OR PUBLIC OFFICIAL. THE MARRIAGE ENDED BY DIVORCE ON
November 13, 2000 IN DR. MY FORMER SPOUSE'S AGE OR DATE OF BIRTH IS
June 25, 1953.

September 20, 2013, 08:23
PAGE   2

NH 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                                 SG-SSA-16

I DO NOT HAVE ANY CHILDREN UNDER AGE 18; AGE 18-19 ATTENDING ELEMENTARY OR
SECONDARY SCHOOL FULL TIME; OR AGE 18 OR OVER AND DISABLED BEFORE AGE 22 WHO
MAY BE ELIGIBLE FOR SOCIAL SECURITY BENEFITS ON THIS RECORD. THIS INCLUDES
CHILDREN WHO MAY OR MAY NOT BE LIVING WITH ME.

I UNDERSTAND THAT I MUST PROVIDE MEDICAL EVIDENCE ABOUT MY DISABILITY, OR
ASSIST THE SOCIAL SECURITY ADMINISTRATION IN OBTAINING THE EVIDENCE.

I UNDERSTAND THAT I MAY BE REQUESTED BY THE STATE DISABILITY DETERMINATION
SERVICES TO HAVE A CONSULTATIVE EXAMINATION AT THE EXPENSE OF THE SOCIAL
SECURITY ADMINISTRATION AND THAT IF I DO NOT GO, MY CLAIM MAY BE DENIED.

I AUTHORIZE ANY PHYSICIAN, HOSPITAL, AGENCY, OR OTHER ORGANIZATION TO DISCLOSE
ANY MEDICAL RECORD OR INFORMATION ABOUT MY DISABILITY TO THE SOCIAL SECURITY
ADMINISTRATION OR TO THE STATE DISABILITY DETERMINATION SERVICES THAT MAY
REVIEW MY CLAIM OR CONTINUING DISABILITY.

I AUTHORIZE THE SOCIAL SECURITY ADMINISTRATION TO RELEASE ANY INFORMATION ABOUT
ME TO A PHYSICIAN OR MEDICAL FACILITY PREPARATORY TO AN EXAMINATION OR TEST.
RESULTS OF SUCH EXAMINATION OR TEST MAY BE RELEASED TO MY PHYSICIAN OR OTHER
TREATING SOURCE.

I AUTHORIZE THAT INFORMATION ABOUT MY DISABILITY MAY BE FURNISHED TO ANY
CONTRACTOR FOR CLERICAL SERVICES BY THE STATE DISABILITY DETERMINATION
SERVICES.

I AGREE TO NOTIFY THE SOCIAL SECURITY ADMINISTRATION OF ALL EVENTS AS EXPLAINED
TO ME.

I DO NOT HAVE A BANK ACCOUNT.

REMARKS:
I AM NOT SURE IF MY EARNINGS AS SHOWN ON MY SOCIAL SECURITY STATEMENT ARE
CORRECT, OR I DO NOT HAVE A SOCIAL SECURITY STATEMENT.
WORK:FOREIGN-2012=N 2013=N 2014=N  USTAXESPD-2012=? 2013=? 2014=?

I KNOW THAT ANYONE WHO MAKES OR CAUSES TO BE MADE A FALSE STATEMENT OR
REPRESENTATION OF MATERIAL FACT IN AN APPLICATION OR FOR USE IN DETERMINING A
RIGHT TO PAYMENT UNDER THE SOCIAL SECURITY ACT COMMITS A CRIME PUNISHABLE UNDER
FEDERAL LAW BY FINE, IMPRISONMENT OR BOTH. I AFFIRM THAT ALL INFORMATION I HAVE
GIVEN IN CONNECTION WITH THIS CLAIM IS TRUE.

NH 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                          SG-SSA-16

SOCIAL SECURITY ADMINISTRATION
IMPORTANT INFORMATION


RECEIPT FOR YOUR CLAIM FOR SOCIAL SECURITY DISABILITY INSURANCE BENEFITS




        MAYRA F PENA

YOUR APPLICATION FOR SOCIAL SECURITY BENEFITS HAS BEEN RECEIVED AND WILL BE
PROCESSED AS QUICKLY AS POSSIBLE.

YOU SHOULD HEAR FROM US WITHIN __ DAYS AFTER YOU HAVE GIVEN US ALL THE
INFORMATION WE REQUESTED. SOME CLAIMS MAY TAKE LONGER IF ADDITIONAL INFORMATION
IS NEEDED.

IN THE MEANTIME, IF YOU CHANGE YOUR ADDRESS, OR IF THERE IS SOME OTHER CHANGE
THAT MAY AFFECT YOUR CLAIM, YOU - OR SOMEONE FOR YOU - SHOULD REPORT THE
CHANGE.

We are providing the attached application for your records.

We stored your application information electronically so there is no reason for
us to retain a paper copy of your application.

IMPORTANT REMINDER

Penalty of Perjury

You declared under penalty of perjury that you examined all the information on
this form and it is true and correct to the best of your knowledge. You were
told that you could be liable under law for providing false information.

THE TELEPHONE NUMBERS TO CALL IF YOU HAVE A QUESTION OR SOMETHING TO REPORT
ARE:

        BEFORE YOU RECEIVE A NOTICE ABOUT YOUR CLAIM:

        AFTER YOU RECEIVE A NOTICE ABOUT YOUR CLAIM:

SOCIAL SECURITY INFORMATION IS ALSO AVAILABLE TO INTERNET USERS AT
WWW.SOCIALSECURITY.GOV.

What You Need To Do

    o  Review the summary to make sure we recorded your statements correctly.

    o  If you agree with all your statements, you may keep the information for
       your records.

    o  If you disagree with any of your statements, please contact us within 10

September 20, 2013, 08:23
PAGE    4

NH 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                          SG-SSA-16

days after receiving this notice to let us know.

ALWAYS GIVE US YOUR CLAIM NUMBER WHEN WRITING OR TELEPHONING ABOUT YOUR
CLAIM. IF YOU HAVE ANY QUESTIONS ABOUT YOUR CLAIM, WE WILL BE GLAD TO
HELP YOU.

WE ARE RETURNING ANY DOCUMENT(S) YOU MAY HAVE SUBMITTED WITH YOUR APPLICATION.

HELPFUL HEALTH CARE WEBSITES

Health Information

The U.S. Department of Health and Human Services provides information on many
health topics at www.healthfinder.gov on the Internet. You may wish to visit
that site to review that information, which may be helpful to you.

Prescription Drug Assistance Programs

You may be able to get help paying for prescription drugs. To find out what
programs are offered by drug companies, state and local governments, and local
organizations, please visit www.healthfinder.gov/rxdrug on the Internet.

CLAIMANT                          SOCIAL SECURITY CLAIM NO.
MAYRA F PENA                      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

# EXHIBIT "R"

Jacqueline R. Rolfs
Chief Human Resources Attorney

Automation and Control Solutions
Honeywell International Inc.
1985 Douglas Drive
Golden Valley, MN  55422 USA
Phone: 763-954-6098
Fax: 763-954-6307
Email: jackie.rolfs@honeywell.com

*SENT VIA FACSIMILE: 1-401-453-0310*

April 25, 2013

Ms. Veronika Kot
Staff Attorney
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI 02903

Re:  Myra Pena

Dear Ms. Kot:

I write in response to your letter dated April 23, 2013.  To ensure that you have all the relevant facts in this matter, I have enclosed the correspondence referred below between Honeywell, your client, and your client's doctor.  I have also enclosed a copy of Honeywell's policy with respect to employees with disabilities, pursuant to your request.

As you will see from the documents, Honeywell has made every effort to engage in an interactive process with Ms. Pena to review her reasonable accommodation request but has failed to receive cooperation with her or her doctor in this regard.

As background, Ms. Pena works as an assembly associate and is required to work in various areas, including the molding area.  On February 21, 2013, Ms. Pena complained to Jose Gouveia, Senior Human Resources Generalist, about her manager requiring her to work in molding. Although she admitted to being trained and physically able to work in molding, she said she didn't like the work and insisted that no one could force her to work in a job she didn't like.

On March 7, 2013, Ms. Pena provided a doctor's note requesting that she not be assigned to the molding area.  In response to this note, Mr. Gouveia provided Ms. Pena with a copy of Honeywell's policy regarding employees with disabilities and asked her to work with her doctor to complete a reasonable accommodation request.

In an effort to resolve the issue quickly, Honeywell also arranged for a conference call to take place between Ms. Pena's doctor and Honeywell's associate director of health services.

Ms. Veronika Kot
April 25, 2013
Page 2

Dr. Elizabeth Jennison, on Wednesday, March 20, 2013. For reasons unknown to us, Ms. Pena's doctor did not dial in for this call.

Therefore, on April 2, 2013, the same day that Ms. Pena provided the completed reasonable accommodation request form, Dr. Jennison sent Ms. Pena's doctor a letter with a few specific questions regarding her request. Contrary to the assertion in your letter, Dr. Jennison did not ask to see all of Ms. Pena's medical records. Instead, she asked how Ms. Pena's symptoms could allow her to work in all areas of the plant except the molding area, where she had successfully worked on several occasions, and asked for documentation from the medical records to support this opinion. To date, Honeywell has received no response to this letter.

By letter dated April 8, Mr. Gouveia informed Ms. Pena that we had not heard from her doctor and therefore had insufficient information to assess the request. Mr. Gouveia told Ms. Pena that while we awaited the information, she had the option to return to work and perform her regular duties or to remain on an unpaid leave of absence. Although Ms. Gouveia expressly asked Ms. Pena to tell him what option she preferred, Ms. Pena did not respond to the letter.

On April 22, 2013, Mr. Gouveia followed up with yet another letter to Ms. Pena telling her that we had not received any information from her physician. He asked her to tell him whether the physician intended to respond and whether Ms. Pena intended to respond to work. To date, Ms. Pena has not responded to this letter.

Honeywell remains willing to work with your client to assess her reasonable accommodation request. However, without the cooperation of your client and her physician in providing responses to Honeywell's reasonable questions about the request, we cannot proceed further in that process.

As we cannot leave Ms. Pena out on an unpaid leave of absence indefinitely, we seek your assistance in obtaining the information requested by Dr. Jennison. If Ms. Pena continues to refuse to provide the requested information or return to work, we will have no option but to terminate her employment.

Sincerely,

Jacqueline R. Rolfs

JRR/fsm

Enc.

11/23/2013  11:36   4014538319  RILEGALSVCS  02/16/17  Page  PAGE 02/02

RHODE ISLAND LEGAL SERVICES, INC.

56 Pine Street, Suite 400   30 Washington Square
Providence, RI 02903       Newport, RI 02840
(401) 274-2652             (401) 846-2264
(500)662-5034             (800)637-4529
FAX (401) 453-0310         FAX (401) 848-0383

BY FACSIMILIE

April 23, 2013

Jacqueline Rolfs,
Chief Human Resources Attorney
Honeywell International Inc.
1985 Douglas Dr
Golden Valley, MN 55422

Dear Ms. Rolfs:

This is in response to your letter, faxed yesterday to my office, and reiterates the voicemail I left for you today. As you know our office is assisting Ms. Pena with her request for accommodations in the workplace. It is my understanding that Ms. Pena has already submitted two clear letters from her doctor specifying what she needs. She also filled out and returned an accommodation request form.

In response she received a letter demanding a release of all her sensitive medical records, including mental health records, signed by Mr. Gouveia. This of course represents an unnecessary and prohibited intrusion upon her privacy.

Please fax to my attention:
1) any form and/or additional question or clarification you would like her doctor to provide;
2) a copy of Honeywell's policy and/or instructions for how requests for workplace accommodations should be handled.

I am very concerned that Ms. Pena has already been out of work for weeks despite being more than willing to perform work with accommodations as specified by her doctor. Therefore please respond immediately.

Sincerely,

Veronika Kot
Staff Attorney

LSC

# EXHIBIT "S"

Jacqueline R. Rolfs
Chief Human Resources Attorney

Automation and Control Solutions
Honeywell International Inc.
1985 Douglas Drive
Golden Valley, MN  55422 USA
Phone: 763-954-6098
Fax:  763-954-6307
Email: jackie.rolfs@honeywell.com

<u>*SENT VIA FACSIMILE: 1-401-453-0310*</u>

April 30, 2013

Ms. Veronika Kot
Staff Attorney
Rhode Island Legal Services
56 Pine Street, Suite 400
Providence, RI 02903

Re:  Myra Pena

Dear Ms. Kot:

In response to your letter of April 30, 2013, we disagree with your assertion that Honeywell has threatened to terminate your client if she doesn't return to work without accommodations. Honeywell's position, as outlined in prior correspondence, is that Ms. Pena is obligated to cooperate with Honeywell in an interactive process to assess her request.  This requires her and her doctor to respond to Honeywell's reasonable inquiries about the nature of the condition and need for accommodation, which they have not done to date.

Asking for addition medical information to support a request for accommodation does not in any way violate the Americans with Disabilities Act.  In fact, the Equal Employment Opportunity Commission makes clear in its Enforcement Guidance on Disability-Related Inquiries and Medical Examinations under the ADA that an employer may make disability-related inquiries in relation to a reasonable accommodation request, particularly where, as here, the disability or need for accommodation is not obvious.

We look forward to receiving the more detailed information requested so that we can work with your client to assess her request for reasonable accommodation.

Sincerely,

Jacqueline R. Rolfs

JRR/fsm

# EXHIBIT "T"

**Honeywell**

### HLS Job Description/Responsibilities
### Honeywell Safety Products
### Position: Assembler Associate (Manufacturing)

**Responsibilities of Position:** In collaboration with the Cell Lead, understands what is to be accomplished during the shift and discusses any shift related issues to achieve area's Safety, Quality, Delivery, Cost and Inventory expected results while supporting HSE & HOS related goals and activities.

- Hourly employees who are engaged in 90% Direct Labor in the manufacturing process either through assembly, machine operation, or set-up.
- Actively participate in daily tier meetings.
- Safety:
  - *Accountable for familiarizing and adhering to area's Cell Risk Assessments.*
  - *Report all safety incidents immediately*
- Quality
  - *Notifies Cell Lead if a quality defect is found and must not pass the product to the next operation.*
- Delivery / Cost:
  - *Meet and adhere to applicable Standard Operation Instructions (SOS/SCS) or any other related documents.*
  - *Notify/signal the Assembler Associate Lead (Cell Lead) when a scheduled order is not accomplished within rate (TAKT).*
- HOS (Honeywell Operating System), such as:
  - *Understand and be involved in reporting area's HOS metrics (KIOSK, individual work station)*
  - *Keep work areas up to 5S Housekeeping Standards*
  - *Actively engaged in eliminating all forms of waste (DOTWIMP) and problem-solving.*
  - *RPS (Rapid Problem Solving) - Responds to Andon / Stack Lights as required*
  - *Make suggestions (CI) to improve standard work if the current standard work cannot be accomplished as required.*
  - *Be cross-trained within the cell and between and among cells based on business need.*
  - *Immediately highlight issues, (safety, production difficulties, quality, any reason for not achieving standard work, etc.)*
  - *TPM (Total Productive Maintenance) – is involved as defined by standard work guideline.*
- Other duties as assigned.

**Key Leadership HOS Behaviors Expectations:**

- Lives on a daily basis the 12 Honeywell Behaviors. For this particular job, special emphasis is placed on:
- GETS RESULTS - Accountability and Ownership over assigned activities. Start and stop work on the standard work schedule.
- CHAMPIONS CHANGE – Open to Changes in the work environment.
- MAKES PEOPLE BETTER – Positive attitude – helps train other employees.
- EFFECTIVE COMMUNICATOR – Communicates issues as they arise and/or deviate from standard.
- FOSTERS TEAMWORK & DIVERSITY – Works with others in a positive manner – not a roadblock to change.
- SELF LEARNER – When spending time with others, is open to learning and being coached.

**Position Alignment: (Reports To/Matrix Mgr/Span of Control)**

ISC Function; Reports directly into Shift Supervisor, takes immediate work direction from the Cell Leads

**Attributes/Skills Required/Sought:**

Must be able to communicate effectively in English; participate in group meetings and have excellent attendance and role model for team members. Must understand and follow written work instructions. Possesses a continuous improvement mindset. Excellent communication and organizational skills. Demonstrated honesty, cooperation, professionalism and integrity.

**Experience/Education Required/Sought:**

- Required: *HS Diploma or GED.*
- Prefered: *1+ years experience in a manufacturing environment. Experience in Lean Manufacturing activities (i.e. - Lean, TQM, SixSigma).*

**Physical Requirements/PPE:**

- Mental-visual concentration on a regular basis and Moderate physical effort. Lift maximum of 35 pounds. Some operations require standing for extended periods of time.
- Required PPE: Safety Glasses and Hearing Protection (Other PPE might be required as specified in area's CRA).

*This job description in no way states or implies that these are the only duties to be performed by the team member(s) incumbent in this position. Team member(s) will be required to follow any other job-related instructions and to perform any other job-related duties requested by any person authorized to give instructions or assignments.*
*An Equal Opportunity Employer, we are committed to a diverse workforce*

HW 000126

# EXHIBIT "U"



Neal J. McNamara
*Partner*
T 401-454-1019
nmcnamara@nixonpeabody.com

One Citizens Plaza, Suite 500
Providence, RI 02903-1345
401-454-1000

June 3, 2014

Marlene Colon Toribio
Rhode Island Commission for Human Rights
180 Westminster Street - 3rd Floor
Providence, RI 02903

RE:     Mayra F. Pena v. Honeywell International, Inc.
        RICHR #14EPD265-06/02; EEOC NO. 16J-2014-00204

Dear Ms. Toribio:

This firm represents Honeywell International, Inc. ("Honeywell" or "Respondent"). This letter
is Respondent's position statement in response to the Charge of Discrimination filed by Mayra
F. Pena ("Ms. Pena" or "Complainant") against Respondent.

## I.     INTRODUCTION

In June 2007, North Safety Products, later acquired by Honeywell, hired Ms. Pena as an
operator. She worked at all times at the Cranston, RI, facility. The facility includes several
production/assembly areas, including respiratory, where Ms. Pena had generally worked, and
moulding. In 2012, Honeywell decided that all employees who worked in the production and
assembly areas should be cross-trained so as to fill in in other areas when, for example,
employees were on vacation, out sick, or on break, or when production needs arise. Therefore,
employees, including Ms. Pena, were trained to perform the functions of all four areas in the
Cranston facility. Specifically, Ms. Pena received training in the moulding area on October 15,
2012.

As set forth in the accompanying Affidavit of Jose Gouveia, attached hereto as Exhibit A, Ms.
Pena resisted being assigned to the moulding area in February and March 2013. Indeed, she
stated that she did not like working there, and would get a doctor's note to avoid having to work
there if necessary. Gouveia Aff., ¶¶2-6. The doctor's note that she subsequently submitted
simply stated that Ms. Pena reported to him that working in moulding exacerbated her anxiety
symptoms, without any explanation of how or why. When she was told that the note was
insufficient, Ms. Pena left work on March 8, 2013, and never returned. It should be noted that
Ms. Pena had previously been granted leaves totaling 23 weeks between October 14, 2011 and
January 14, 2013.

Ms. Toribio
June 3, 2014
Page 2

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

Dr. Elizabeth Jennison, Honeywell's Associate Director of Health Services, subsequently wrote to Ms. Pena's physician, Dr. Greer, and asked him to "clarify how Ms. Pena's anxiety symptoms could allow her to work in many areas of the plant, while interfering with her ability to function in one area of the plant, the molding room, for which she is equally qualified and trained?" In a subsequent memo to Ms. Pena's lawyer, dated April 29, 2013, referred to "increased noise levels, chemical odors, and the presence of robotics in the molding room." It should be noted that those conditions exist in other areas of the facility, and that the robotics in the molding area are enclosed. See Exhibit B. Therefore, Dr. Greer never responded to the question posed by Dr. Jennison, nor did he or Ms. Pena propose any accommodation short of simply removing the moulding room responsibilities from her job.

Beginning in April 2013, Veronica Kot, an attorney from RI Legal Sevices claiming to represent Ms. Pena, engaged in ongoing communication with Honeywell, including Honeywell's in house employment counsel, Jacqueline Rolfs. That correspondence, attached as Exhibit C, demonstrates Honeywell's willingness to engage in the interactive process, and Ms. Pena's resistance to providing information to support her request for an accommodation that would alter her job description. The last correspondence from Ms. Pena's attorney was dated May 6, 2013. Nevertheless, Honeywell waited an additional six weeks for Ms. Pena to contact it with additional information. By June 17, 2013, having received no additional information and with no contact whatsoever from Ms. Pena, who had been out on a leave for over three months, Honeywell terminated her employment for job abandonment. See letter attached as Exhibit D. See also generally Response to Charge of Discrimination, attached hereto as Exhibit E.

## ARGUMENT

A.   No *Prima Facie* Case of Disability Discrimination.

In order to satisfy her *prima facie* case of disability discrimination, Complainant must demonstrate that she was: (1) disabled within the meaning of the applicable statutes; (2) a qualified individual, meaning she could perform the essential functions of her job with or without reasonable accommodation; and (3) discharged in whole or in part because of her disability. See Barber v. Verizon New England, 2006 U.S. Dist. LEXIS 88397, at *8 (D.R.I. Dec. 6, 2006); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 25 (R.I. 2005). Plaintiff cannot satisfy any of these prongs.

B.   Complainant Was Not Disabled, or Regarded as Disabled

In order to establish the first prong, Complainant must prove that she suffered from an impairment that substantially limited a major life activity, that Respondents regarded her as having an impairment which substantially limited a major life activity or that she had a record of a physical or mental impairment that substantially limited a major life activity. See 42 USC §12101; R.I. Gen. Laws § 28-5-9 (2013), R.I. Gen. Laws § 42-87-1 (2013); Tardie v. Rehabilitation Hosp., 168 F.3d 538, 542 (1st Cir. 1999); Barber, 2006 U.S. Dist. LEXIS 88397, at *9-10; DeCamp, 875 A.2d at 20-25. Complainant alleges that she suffered from anxiety and

Ms. Toribio
June 3, 2014
Page 3

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

depression, as well as diabetes. Honeywell was aware that Ms. Pena had diabetes. It learned that she had a diagnosis of depression, in April 2013, one month after she went on her leave. She has not identified, in her Charge or elsewhere, any major life activity that is limited by these impairments. The ADA requirement that a claimant "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience … is substantial." Alberston's Inc. v. Kirkinburg, 427 U.S. 555, 567 (1999). It is insufficient for a claimant to attempt to prove her disability status merely by submitting evidence of a medical diagnosis of an impairment. Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 198-99 (2002). The fact that Honeywell was aware that Complainant had been diagnosed with certain impairments does not automatically satisfy Complainant's burden of showing that Respondents either knew Complainant was disabled or regarded her as such. See Rivera- Mercado v. Scotiabank de Puerto Rico-Int'l, 571 F.Supp.2d 279, 287 (D.P.R. 2008) (citing Taylor v. Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2001) (stating that an employer's knowledge or awareness of an impairment neither creates a record nor demonstrates that the employer regarded the employee as disabled under the statute or that the perception caused the adverse employment action).

Nor can Complainant establish she was a qualified individual who could perform the essential functions of the position with or without reasonable accommodation. Honeywell made a decision in 2012 that all its employees who worked on the floor at the Cranston facility needed to be able to work in all areas of the facility, and to rotate among those areas as needed. Ms. Pena and the other employees were all trained to be able to perform those various functions. The ability to perform the work in all production areas of the facility, and to rotate among them, is an essential function of the position. Despite the fact that the burden is on the Complainant "of proposing an accommodation that would enable him to perform his job effectively and is, at least on the face of things, reasonable." Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001). However, Ms. Pena simply refused to work in one area, and did not suggest any other accommodation other than not performing that function. Of course, that means that other employees would have to perform those functions. It is well settled, though, that "an employer's obligation to make reasonable accommodations does not require the employer to rewrite the essential elements of a job description or to reallocate those functions to other workers." Rios-Jimenez v. Principi, 520 F.3d 31, 42 n.9 (1st Cir. 2008).

Moreover, the evidence will show that Ms. Pena simply did not want to work in molding because she did not like it, and only raised the issue of a doctor's note when she was told that working in molding was part of her job. See Affidavit of Jose Gouveia. Courts have found that a requested accommodation that comes only when the employee seeks to use the accommodation as a way to avoid either an adverse employment action or some work obligation is not a reasonable request. See, e.g., Soileau v. Guilford of Maine, 105 F.3d 12, 17 n.4 (1st Cir. 1997); Wynne v. Tufts Univ. School of Med., 976 F.2d 791, 796, n.3 (1st Cir. 1992).

Finally, Complainant failed to fully engage in the requisite interactive process regarding the accommodation she requested. Honeywell's duty to accommodate did not even arise in view of

Ms. Toribio
June 3, 2014
Page 4

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

the fact that, as discussed above, the accommodation Ms. Pena requested did not allow her to perform the essential functions of her job with an accommodation. DeCaro v. Hasbro, Inc., 580 F.3d 55, 63 (1st Cir. 2009). In addition, an interactive process requires a great deal of communication between the employer and the employee. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648, n.12 (1st Cir. 2000). Once an accommodation is requested, the responsibility for fashioning a reasonable accommodation is shared between the employer and the employee. 29 C.F.R. §1630.9 App. (1995). Here, Complainant request an accommodation, and the employer responded with questions as to why she could function in other areas but not in molding. Complainant never moved off her insistence that she not work in molding, and never suggested an accommodation that would allow her to perform that function of her position. That being the case, she failed to participate in the interactive process.

C.   Plaintiff Cannot Establish *Prima Facie* Case of Unlawful Retaliation

In order to satisfy a *prima facie* case of retaliation, Complainant must show (1) she engaged in protected activity, (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Shoucair v. Brown, 917 A.2d 418, 436 (R.I. 2007). Complainant claims that she was assigned to the moulding room because she complained that her supervisor did not allow her to take a break in connection with her diabetes, and then refused to transfer her back to another department, and eventually terminated her employment. On the contrary, complainant was assigned to the moulding room because that was part of her job. She refused to perform that part of her job, left the workplace and never returned. After she was absent for over three months[1], Honeywell terminated her employment for job abandonment.

D.   Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Termination

In employment discrimination and retaliation cases, once a complainant employee establishes her *prima facie* case, the burden shifts to the respondent employer to offer a legitimate, nondiscriminatory reason for discharging the employee. Poulin v. Custom Craft, Inc., 996 A.2d 654, 658-59 (R.I. 2010). Respondents had a legitimate and lawful reason for terminating Ms. Pena's employment: as stated above, she had been out on a leave for over three months, a leave which had never been approved, and neither she nor her attorney had been in touch with Honeywell for over one month. This was sufficient to support the decision to terminate her employment.

E.   Complainant Cannot Show Respondents' Articulated Legitimate Nondiscriminatory Reasons to be a Pretext For Discrimination or Retaliation.

Complainant bears the burden of demonstrating that Respondent's articulated reason is a pretext for discriminatory or retaliatory animus. Id. at 659. To establish a pretext, Complainant must "identify and relate specific instances where persons similarly situated 'in all relevant aspects'

---

[1] Complainant had no available FMLA time.

Ms. Toribio
June 3, 2014
Page 5

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

were treated differently." See <u>Matthews v. Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 129,
686 N.E.2d 1303 (1997), (quoting <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19
(1st Cir. 1989)); <u>Hodgens v. General Dynamics</u>, 963 F. Supp. 102, 106 (D. R.I. 1997) (in order
to successfully state a *prima facie* case of discrimination, plaintiff must show less favorable
treatment than similarly situated co-workers). Whether a person is similarly situated depends on
a comparison of performance, qualifications, and conduct. See <u>Matthews</u>, 426 Mass. at 130.
Complainant cannot, and indeed does not, point to any similarly situated individuals who were
treated more favorably than she. Indeed, Honeywell had been very generous with leave time for
Ms. Pena.  Despite the fact that she had previously been granted leaves totaling 23 weeks
between October 14, 2011 and January 14, 2013, and had no available FMLA time in March
2013, Honeywell did not terminate her employment for job abandonment until she had been
absent for over three months, and the company had not heard from her or her lawyer for over
one month.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Respondents respectfully request that the Commission issue a finding
of no probable cause and promptly dismiss this action.

Respectfully submitted,

Neal J. McNamara

Encls.
NJM/ml

# EXHIBIT "V"

Myra Pena

Note to File:

***All conversations with Myra Pena that I (Jose Gouveia, HRG) was present and part of were translated in Spanish to ensure employee understands and actively participates comfortably in the communication process.

On 2/21/2013, (Today) Myra Pena approached me to let me know that she was having a problem with one of the leaders, Myra Fermin. I asked her what was the issue, and she told me that Myra Fermin, asked her to go to the Molding department. She said everybody knows she does not like to go to the Molding Department. I asked why, and she said she just does not like it.

I called Myra Fermin and asked if Myra Pena, told her she did not want to go to the Molding Department and if she knew the reason why. Myra Fermin told me that Myra Pena continuous to refuse to do certain jobs but mostly in Molding because she does not like it.

I followed up with Myra Pena and she said that no one could force her to do a job she does not like. And, that she felt nervous when she was working in Molding. I asked her if she was properly trained and she said yes. I asked her if she knew how to do the job and she said yes. I asked her if she felt the job was a heavy and/or difficult job, and she said no. She then added I don't like working there. I told her she needs to do the job in that area because all operators rotate base on production needs and daily assignments. I told her that some of her co-workers felt this was unfair because they all work in all areas as they are assigned on a daily basis. She said that she cares about herself and not the others everyone can speak for themselves, but she would do her best.

On the same conversation Myra added that she was diabetic and the breaks were 15 and 30 minutes apart from her lunch and she could not be 15 minutes late for her coffee nor 30 minutes late for her lunch break. I told her that the 15 and 30 minutes apart were not a significant amount of time that she could not work around it. In any case if this would create a problem, I could revisit the breaks issue. She said, I don't like to change my break time, if you want I can get a doctor's note stating that I cannot change my breaks.

On 3/7/2013, (Today) Kevin Dyer, Myra Pena's supervisor called me to assist him with another situation in which Myra Pena was refusing to do her job. In this conversation, Sandra Sycal was also present as she was the one that Myra told she would not work in Molding. I asked Myra what changed since our last conversation and she said: "if anyone forces me to work in Molding, I will get a Doctor's note and this way you cannot force me to work there."

I said, Myra, we are not forcing you we are scheduling you to work there because this is part of your job. She mentioned that she was going to call her husband to bring a letter because she would not work in Molding. The husband came to my office on the same day and said: "Here is the letter from Myra's Doctor. She comes across with a bit strong personality, but she is not a bad person."

I told him that none of us were against Myra, we are trying to make her understand that we have made an honest effort in trying to accommodate her work preference when it was possible, but going forward this may not always be possible and she needs to realize this creates an employee relations issue with other employees.

On 3/8/2013, (Today) Kevin Dyer, Supervisor; Connor Ryan, HSE Leader; and myself invited Myra Pena to go over the doctor's note and for us to understand the reason why she did not want to work in Molding. Myra pointed her finger at me and said: "I told you already the other day! I will not go to Molding today or never! If you want a doctor's note, I will get you another doctor's note, but I will not go work there. I will not do that job." Conor Ryan, explained that the letter stated that she experiences exacerbated anxiety. We then recommended that we don't have work in another area, and that's the only area that needs help and in this case she needs to go home for refusing to do her job.

She said that if that is the case, her doctor told her that she would be put on Workman's Comp and this way the company will see what she will do. Furthermore, she added, she was going to get an attorney and she will do what she needs to do. While saying these statements, she pointed her finger at me again, and I asked her not to point her finger at me because I was taking it in a very disrespectful way and I did not appreciate that. She said I am not afraid of anyone. She left the meeting saying she will be getting another doctor's note and she will bring it to work, but I will not do that job.

On 3/14/2013, in response to a voice mail received, Kevin Dyer called Myra Pena

1. Asked her how she was doing and she replied good

2. Asked her about her new doctors not she said she did not understand

3. She spoke with someone and they got on the call (a female voice)

4. I asked the female about the doctor's note and she replied the doctor was going to call me

5. I replied that I have not received a call from her doctor.

6. She replied that Mayra would call the doctor again

7. I replied that she needed to let me know what is going on after she talks to the doctor.

On 3/14/2013

Someone left a message on my voice mail (female on behalf of Myra Pena) asking if any doctor has contacted us. I called the number provided and spoke directly with Myra. She told me she went to her doctor on Tuesday and was informed that her doctor would contact us directly. I informed her we were not contacted by any doctor and we need a letter from the doctor-not a phone call. According to her, her doctor wants to speak directly with us. She informed me she will follow up with the doctor tomorrow because he did not give her the letter.

I also reminded the employee she could file for TDI and Short-Term Disability while we were waiting for additional information from her doctor. Myra once again said she would call her doctor to get more information, but she was not interested in filling for TDI or STD.

On 3/22/2013, (Today) I called Myra to let her know she would be receiving a form  that needed to be filled out by her and her doctor to state and clarify the restrictions. She told me her doctor would be on vacation, but as soon as she would receive the letter she would drop it off at her doctor's office.  I informed Myra if she had any questions about the form she could give me a call.

On 3/26/2013, I called Myra and left a message for her to give me a call back.

On 3/27/2013, (Today) I followed up with Myra and she told me he has an appointment with her Doctor on 4/1/2013, to fill the form.

On 4/3/2013, (Today) Myra's husband, Dario Olivo, presented to me another letter from her doctor, James E. Greer, as well as the Reasonable Accommodation Request Form. On the form only her part was filled out and not the Physician's on page 2. Myra's husband, said the doctor did not want to fill page 2.

On 4/22/2013, (Today) I received phone call from Veronica Cot, Staff Attorney with RI Legal Services, who is representing Myra Pena. On the call Veronica Cot, asked what was the information Honeywell needed from Myra Pena in order to assess her request for reasonable accommodation. I told her that I sent two letters to Myra explaining what was needed and, our medical department sent a letter to her doctor requesting the information.  I also informed Veronica, I will not be able to further discuss anything with her, any correspondence would have to be done through our legal department. Veronica gave me her contact information. I called Jackie Rolfs to inform her about the call received.