# EXCERPTED DEPO. TR. JAMES E. GREER, M.D.

# In The Matter Of:

*Pena vs*
*Honeywell International, Inc.*

*James E. Greer, M.D.*
*December 12, 2016*



**ALLIED COURT REPORTERS, INC.**
— *and* —
**VIDEO CONFERENCE CENTERS**

Phone: 401-946-5500    Toll Free: 888-443-3767
www.alliedcourtreporters.com    info@alliedcourtreporters.com

*Min-U-Script® with Word Index*

1  will accept them and then given that the person is
2  still able to work in the other settings, that
3  I -- I was surprised that it was being carried to
4  this length.
5  Q. Okay. Did you provide any additional information
6     in response to Dr. Jennison's letter?
7  A. I don't -- as you said, I think that something
8     was set up, which apparently didn't happen. I
9     don't see any documentation of it. So without any
10    documentation to the contrary, I would say no.
11 Q. Did you consider trying to contact Dr. Jennison to
12    have a conversation with her to understand better
13    what they were looking for?
14 A. I -- I felt -- I think I felt at the time that
15    I had provided what information that I could.
16 Q. So you felt that there was no additional
17    information you could provide?
18 A. Not based on these things. I don't think I --
19    I didn't think that I had any ability to make
20    judgments about workplace conditions that I'm not
21    familiar with and have no expertise in.
22 Q. And did you consider perhaps visiting the
23    workplace so you could --
24 A. No.
25 Q. Why not?

James E. Greer, M.D. - December 12, 2016

60

1  A.  Because I -- I don't have time in my busy
2  practice.  I work for a community mental health
3  center where we have a very large volume of
4  patients and we don't have time to do things like
5  that.  And that would be an extraordinary thing
6  that I can't imagine any member of my extended
7  practice doing, 12 or 14 prescribers.  That
8  would be --
9  Q. In your practice within The Providence --
10  A.  At The Providence Center, yes.
11  Q. Right.
12  A.  That's not something that we have the ability
13  to do.
14  Q. Are you aware if medical providers with respect to
15  other situations like Workers' Comp. make visits
16  to workplaces to evaluate the workplace?
17  A.  I'm not aware of whether or not they do.
18  Q. Okay.  And at that point you don't believe
19  that you were in contact with an attorney from
20  Rhode Island Legal Services that had been retained
21  by Ms. Pena?
22  A.  I -- as of April?
23  Q. Right.
24  A.  I think if -- if anything -- and again, I
25  don't recall whether I did this or not, but I may

1  Q. In that you say, "As I am not conversant with the
2     makeup of the molding room area, I cannot
3     specifically identify particular issues there
4     which might exacerbate her stress but can state
5     within a reasonable degree of medical certainty
6     that there is a direct causal relationship between
7     her working in that setting and the exacerbation
8     of her symptoms."
9  A. Right.
10 Q. Now, as we've -- as you admit here, Doctor, you
11    don't know about the makeup of the molding area?
12 A. Right. I don't. I don't. Other than, you
13    know, what she had identified as I mentioned in
14    the first paragraph, that there was noise levels,
15    chemical odors, and robotics.
16    But again, I -- never having visited the
17    workplace and not having any experience in that,
18    my -- I would not be speaking from any
19    professional capacity if I were to have seen it or
20    not. It was really more what her response was
21    and which -- as opposed to the environment itself.
22    I am assuming there are many people who work in
23    the molding room and find it perfectly
24    comfortable.
25 Q. And you, of course, were not familiar with any of

James E. Greer, M.D. - December 12, 2016

65

1   the other areas in that facility either?
2   A.  No.  I -- I -- I have no idea, to be honest
3   with you.
4   Q.  And you have no idea with respect to the other
5   areas what the noise level was, whether there were
6   chemical odors or whether there were robotics in
7   any of the other areas including where Ms. Pena
8   worked on a regular basis?
9   A.  Only in her reports that this represented a
10  difference that she found to be stressful.
11  Q.  Okay.  So your statement that you can state within
12  a reasonable degree of medical certainty that
13  there is a direct causal relationship relies on
14  her self-report; correct?
15  A.  Yes.  And as -- her self-report and -- and my
16  observations of her --
17  Q.  Of course.
18  A.  -- her emotional state when she would visit
19  with me.
20  Q.  But as we've discussed several times and you have
21  freely admitted, you have no independent
22  verification of that?
23  A.  Of --
24  Q.  Of the conditions.
25  A.  Oh, of the conditions?  No.  That's correct.