UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MAYRA F. PENA )
 )
 PLAINTIFF )
 )
V. )
 )
 ) C.A. NO:15-CV-00179-S-LDA
HONEYWELL INTERNATIONAL INC., )
 )
 DEFENDANT )

# DEFENDANT HONEYWELL INTERNATIONAL INC.'S RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE LINCOLN D. ALMOND'S REPORT AND RECOMMENDATION TO GRANT SUMMARY JUDGMENT

## I. INTRODUCTION

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, Defendant Honeywell International Inc. ("Honeywell" or "Defendant") hereby responds to Plaintiff Mayra Pena's ("Ms. Pena" or "Plaintiff") Objection (the "Objection") to Magistrate Judge Lincoln D. Almond's Report and Recommendation (the "R&R") in connection with Honeywell's Motion for Summary Judgment. As Magistrate Judge Almond properly concluded, Honeywell is entitled to summary judgment on all Counts of Plaintiff's Complaint.[1]

First, as Magistrate Judge Almond recognized, Plaintiff's claim that she was otherwise qualified to perform her job duties at Honeywell is irreconcilably at odds with the statements

---

[1] Plaintiff's Complaint contains twelve counts that assert essentially three separate causes of action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq, and four Rhode Island state antidiscrimination statutes, the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws §§ 42-112-1 et seq., the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws §§ 28-5-1 et seq., the Rhode Island Civil Rights of People with Disabilities Act ("RIPDA"), R.I. Gen. Laws §§ 42-87-1 et seq., and the Rhode Island Whistleblower's Protection Act ("RIWPA"), R.I. Gen. Laws §§ 28-50-1 et seq. Plaintiff's causes of action are (1) failure to provide a reasonable accommodation pursuant to a disability under the RICRA, FEPA, RIPDA, and ADA, Counts I through IV; (2) discriminatory discharge on the basis of disability under RICRA, FEPA, RIPDA, and ADA, Counts V through VIII; and (3) retaliation under RICRA, FEPA, RIPDA, and RIWPA, Counts IX through XII.

Plaintiff made in her sworn Social Security Disability Insurance ("SSDI") Application where she claimed to be totally disabled. Specifically, Plaintiff stated in her SSDI Application and deposition testimony that as of March 8, 2013 (her last day of work), she was totally disabled and unable to perform any work whatsoever. However, the entire basis of Plaintiff's claim in this litigation is her allegation that on March 8, 2013, she could not work in the Molding Department but was "completely capable of working in other settings." In her Objection, Plaintiff does not even attempt to reconcile her two contradictory sworn statements. Instead, she invites this Court to go rogue by ignoring well-settled United States Supreme Court precedent and, instead, follow EEOC guidance issued *before* the Supreme Court set forth the current framework for assessing these claims. This Court should decline her invitation and conclude (as it must, based on all of the record evidence) that summary judgment is appropriate because Plaintiff has not offered any explanation to reconcile her statements in her SSDI Application and her deposition with the essential elements of her discriminatory discharge and reasonable accommodation claims. Moreover, even setting aside Plaintiff's SSDI Application, her discriminatory discharge claim also fails because she has presented no evidence that her discharge was motivated by discriminatory animus.

Plaintiff's retaliation and whistleblower claims are equally flawed, as she has offered no evidence of a causal connection between a February 21, 2013 conversation with Honeywell's human resources generalist about her break schedule and her subsequent termination nearly four months later on July 17, 2013. As Magistrate Judge Almond properly noted, after February 21, 2013, Plaintiff's break schedule was never mentioned again, and the dialogue focused singularly on the issue of her assignment to Honeywell's Molding Department. In her Objection, Plaintiff relies solely on gross speculation to attempt to save her retaliation and whistleblower claims.

4843-1528-2513.1

Not only is her speculation not supported by any evidence, but it also runs contrary to all of the evidence and undisputed facts in this case. In fact, the undisputed evidence shows that Honeywell terminated Plaintiff's employment only after she refused to perform that part of her job, left the workplace, and never returned. Even then, Honeywell did not terminate her until she was absent for over three months and after she had not responded to Honeywell's communications for over a month. For these and other reasons discussed below, this Court should accept Magistrate Judge Almond's R&R and enter judgment in favor of Honeywell as to all Counts of Plaintiff's Complaint.

## II. PLAINTIFF'S REASONABLE ACCOMMODATION AND DISCRIMINATORY DISCHARGE CLAIMS (COUNTS I – VIII)

1. Plaintiff's Sworn Statements in her SSDI Application and Subsequent Deposition Testimony Preclude Her ADA Claim

Plaintiff stated in her SSDI application, under oath and in black and white, "I became unable to work because of my disabling condition on March 8, 2013. I am still disabled."[2] (ECF Doc. No. 28, ¶¶ 90, 91). This statement is entirely at odds with her position in this litigation that on March 8, 2013 (her last day of work), she could not work in the Molding Department but was "completely capable of working in other settings."

The law is well-settled that "to defeat [a defendant's] motion for summary judgment, [a plaintiff] must explain why the representations of total disability [s]he has made in the past are consistent with [her] current claim that [s]he could perform the essential functions of [her position] with reasonable accommodation." Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001) (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805, 119 S.Ct. 1597 (1999)). Where, as here, a plaintiff does not offer a sufficient explanation—or cannot offer a sufficient

---

[2] Based on this representation, an Administrative Law Judge determined that Plaintiff was totally disabled as of her last day of work and ordered SSDI benefits retroactive to March 8, 2013. (ECF Doc. No. 28, ¶ 92).

explanation based on the specificity of her statements provided in her SSDI application—summary judgment should be granted. See Sullivan, 262 F.3d at 47 (concluding that summary judgment in favor of employer was appropriate where plaintiff offered no evidence to explain why the representations of total disability that he made in applications for SSDI and workers' compensation benefits are consistent with his current claim that he could perform the essential functions of a security guard with reasonable accommodation).[3]

In her Objection, Plaintiff does not even attempt to reconcile her two contradictory positions. Instead, Plaintiff misapprehends the Supreme Court's holding in Cleveland and, in attempting to satisfy her distorted interpretation of that holding, **admits that her statements in her SSDI application and this litigation are inconsistent**. Specifically, Plaintiff's Objection is focused on her attempt to show that "[Plaintiff] has given a sufficient explanation for **why she provided inconsistent statements** in her SSDI application and her ADA litigation." *Plaintiff's Objection*, p. 11 (emphasis added). However, that is not at all what Cleveland requires; instead, Cleveland requires a plaintiff to "explain why the representations of total disability [s]he has made in the past are **consistent with** [her] current claim that [s]he could perform the essential functions of [her position] with reasonable accommodation." Sullivan, 262 F.3d at 47 (citing Cleveland, 526 U.S. at 805) (emphasis added).

---

[3] With respect to Plaintiff's RICRA, FEPA and RIPDA claims, the Rhode Island Supreme Court routinely looks for guidance from federal courts interpreting the ADA. See Barber v. Verizon New England Inc., No. 05-390-ML, 2006 WL 3524465, at *3 (D.R.I. Dec. 6, 2006); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 21 (R.I. 2005) (stating that the FEPA and RICRA parallel the federal ADA and relying on federal case law in assessing claims under these state statutes); Evans v. Rhode Island Dep't of Bus. Regulation, No. 01-1122, 2004 WL 2075132, at *5 (R.I. Super. Aug. 21, 2004) (stating that, given the parallel nature of the statutes, Rhode Island Courts have applied ADA case law in interpreting the RIPDA). Consequently, this Court should look to federal cases addressing disability discrimination, retaliation, and reasonable accommodations in ruling on Honeywell's summary judgment motion.

Plaintiff does not stop there. She brazenly goes a step further by arguing that this Court should ignore one of her two sworn statements. This argument further illustrates her misunderstanding of the Supreme Court's holding in Cleveland. In particular, Plaintiff argues:

> [W]hen given the choice between having to accept one of the two **contradictory** statements, it is curious that Honeywell conveniently accepts the statements Pena made in her SSDI application as the ones that are truthful and accurate. Why doesn't Honeywell take the position that Pena lied on her SSDI application, but that she is telling the truth in her ADA litigation?

*Plaintiff's Objection*, p.11 (emphasis added). In support of this argument, Plaintiff urges the court to rely upon an affidavit that directly contradicts her SSDI application and deposition testimony, and assures this Court that, if given the opportunity, she will testify in accordance with this affidavit (and not in line with her SSDI application and deposition testimony) at trial. *Plaintiff's Objection*, p. 11. However, the purpose of Cleveland is not to force a plaintiff to choose which forum in which she lied, but the opposite: Resting upon principles of judicial estoppel, the purpose is to preclude a plaintiff from lying under oath in the first place. Indeed, as the Court stated in Cleveland, "a party's directly conflicting statements about purely factual matters, such as 'The light was red/green,' present precisely the sort of threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent." Boston Gas Co. v. Century Indem. Co., 708 F.3d 254, 264 (1st Cir. 2013) (quoting Cleveland, 526 U.S. at 802). As a result, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland, 526 U.S. at 806.

Unsurprisingly, all of Plaintiff's "explanations" in her Objection are focused on her reasons for why she made inconsistent statements, and do not at all address how her statements

could somehow be consistent. First, she blames her SSDI attorney, stating that he "advised her to use March 8, 2013, her last day of work, as the date of the onset of her disability." *Plaintiff's Objection*, p. 11. If the Court accepts Plaintiff's implication as true, it must also conclude that she committed perjury in her SSDI application and in her deposition by swearing under oath that her complete inability to work started on March 8, 2013.[4] Without concurrently admitting to perjury, Plaintiff's attorney's advice does not change the fact that she testified, under oath, that she was completely unable to perform work as of March 8, 2013.

Next, Plaintiff attempts to blame Honeywell's counsel by stating that "Honeywell's counsel attempted to dupe [Plaintiff] into testifying that she was too disabled to work on March 8, 2013, when this was not true and Honeywell knew it." *Plaintiff's Objection*, p. 10. Not only is this irrelevant because it is Plaintiff's burden to show that her statement in her SSDI application is **consistent with her current claim**, Sullivan, 262 F.3d at 47, but it is also entirely untrue. During her deposition, defense counsel repeatedly asked Plaintiff to explain how her statement in her SSDI application that she was disabled and unable to work could be reconciled with her current claim that she was able to perform the essential functions of her position. (ECF Doc. No. 28, ¶¶ 94-95). Each and every time, Plaintiff did not provide an explanation, but, instead, underscored the fact that she was completely unable to work.[5] (ECF Doc. No. 28, ¶¶

---

[4] Specifically, Plaintiff's application states that: "I KNOW THAT ANYONE WHO MAKES OR CAUSES TO BE MADE A FALSE STATEMENT OR REPRESENTATION OF MATERIAL FACT IN AN APPLICATION OR FOR USE IN DETERMINING A RIGHT TO PAYMENT UNDER THE SOCIAL SECURITY ACT COMMITS A CRIME PUNISHABLE UNDER FEDERAL LAW BY FINE, IMPRISONMENT OR BOTH. I AFFIRM THAT ALL INFORMATION I HAVE GIVEN IN CONNECTION WITH THIS CLAIM IS TRUE." (ECF Doc. No. 28, ¶¶ 90, 91). Her application summary further reminds her, "You declared under penalty of perjury that you examined all the information on this form and it is true and correct to the best of your knowledge. You were told that you could be liable under law for providing false information." (ECF Doc. No. 28, ¶¶ 90, 91).

[5] Specifically, when asked to explain how she can claim on the one hand that she was completely unable to work and, on the other hand, that she could perform the essential functions of her job, Plaintiff stated: "The thing is that from that date, the dose of medication for the depression was increased, and also I also got four more pills because of the tachycardia, and also I got medication to help me sleep." (ECF Doc. No. 28, ¶ 94). When asked

- 6 -
4843-1528-2513.1

94-95). Despite having numerous opportunities to explain how her statements were somehow consistent, Plaintiff failed to do so.

In a last-ditch effort to save her claim, Plaintiff requests that this Court ignore the Supreme Court's well-settled precedent in Cleveland and its progeny, and, instead, follow EEOC Enforcement Guidance issued in February 1997, which set forth factors for field officers to consider in assessing whether an application for disability benefits should bar an ADA claim. EEOC Notice No. 915.002 (2-12-97). However, the EEOC's guidance—issued *before* the United States Supreme Court set forth the current framework for assessing these claims—no longer has any bearing whatsoever on the interplay between an SSDI application and an ADA claim. Specifically, two years after the Commission issued the aforementioned guidance, the United States Supreme Court issued its opinion in Cleveland, in which it held:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

526 U.S. at 807. As shown, the Court quite clearly set forth the test to determine the effect of an SSDI application on a plaintiff's ADA claim. None of the factors that Plaintiff analyzes under the EEOC Guidance are consistent with the straightforward test set forth in Cleveland. Consequently, this Court would err as a matter of law by resting its decision upon them.

In all, Plaintiff has now testified under oath on numerous occasions that she was unable to work as of March 8, 2013, her last day of work. She has not offered **any explanation** – let alone a sufficient one – as to how that testimony could somehow be consistent with her

---

whether, by her statement in the SSDI Application, she meant that she was unable to do any work, she replied: "Yes, at that time when I stated that, yes, because I was under a lot of medications, and my depression increased." (ECF Doc. No. 28, ¶ 95).

- 7 -

reasonable accommodation and discriminatory discharge claims in this litigation, which require her to prove she was a qualified individual with a disability as of that date. Accordingly, her claim fails as a matter of law. Melendez-Santana v. Puerto Rico Ports Auth., 296 F. App'x 98, 100 (1st Cir. 2008) (concluding summary judgment was appropriate on ADA claim where Plaintiff offered no explanation as to statements in SSDI application as to total disability); Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001) (same); Femino v. NFA Corp., No.06 143 ML, 2007 WL 1991530, at *5 (D.R.I. June 6, 2007) (same), report and recommendation adopted, No. 06-143 ML, 2007 WL 1893719 (D.R.I. June 29, 2007), aff'd, 274 F. App'x 8 (1st Cir. 2008).

2. No Evidence of Discriminatory Discharge

Even if Plaintiff's discriminatory discharge claim (Counts V through VIII) was not fatally flawed based upon her sworn statements in her SSDI application, it nevertheless fails because – as Magistrate Judge Almond properly concluded – Plaintiff did not present any competent evidence from which a reasonable juror could conclude that her June 17, 2013 discharge for job abandonment was motivated by discriminatory animus. As Magistrate Judge Almond stated, Plaintiff conceded that Honeywell had legitimate reasons to cross-train its employees to work in the Molding Department and that other employees expressed dislike of the Molding Department because of the pace of the work and reduced opportunity to socialize. (*R&R*, p. 16). As a result, Honeywell unsurprisingly closely scrutinized her request to be excused from the Molding Department, and Plaintiff presented no evidence to suggest that "Honeywell's business decision was in any way personal to Plaintiff or motivated in any way by her particular work history or abilities." (Id.).

In her Objection, Plaintiff sets forth a number of reasons that she believes show Honeywell discharged her because of her disability—each of which is either grossly speculative and unsupported by evidence, or not relevant to her disability discrimination claim. For example:

- Plaintiff states that "Honeywell knew about Pena's past FMLA medical leaves for seasonal depression." (*Plaintiff's Objection*, p. 6). However, Plaintiff's seasonal depression has nothing to do with this case. She claims in the instant case that her disability was anxiety as a result of working in the molding department. Plaintiff does not present any claim based upon her seasonal depression and, in fact, Honeywell accommodated each of her requested medical leaves for her seasonal depression by allowing her time to take trips to the Dominican Republic. (ECF Doc. No. 28, ¶ 26). Thus, Plaintiff's seasonal depression or Honeywell's knowledge thereof have nothing to do with this claim.

- Plaintiff states that "Honeywell knew that Pena had been receiving counseling and medication from a mental health provider since 2010." (*Plaintiff's Objection*, p. 7). In support, she relies upon the letterhead of a letter written by her physician, Dr. James Greer, dated March 8, 2013, which lists the services he provides, including "Mental health and substance abuse care and treatment services . . . ." First of all, it is absurd to believe that each and every time an employee submits a doctor's note, an employer is required to assume that their employee receives treatment for all of the conditions that a doctor sets forth in his letterhead. No reasonable juror would so conclude. Further, given that the note is dated March 8, 2013, it is unclear how Plaintiff concludes that

- 9 -

- Honeywell's knowledge dated back to 2010. Indeed, Plaintiff offers no evidence or explanation of this.

- Plaintiff claims that Jose Gouveia, Honeywell's Human Resources Generalist, suggesting "that she apply for some of disability insurance [on February 21, 2013] leads to a very strong inference that Gouveia must have believed that Pena was unable to work due to a disability or medical issue." (*Plaintiff's Objection*, p. 7-8). First, Mr. Gouveia's suggesting that Plaintiff apply for disability benefits if she was unable to perform her job was part of his role as Human Resources Generalist and, without more, does not give rise to any inference of discrimination. Moreover, the temporal proximity of **nearly four months** between this statement and Plaintiff's termination on June 17, 2013, is insufficient to show any causal connection. See Reilly v. Cox Enterprises, Inc., No. 13-785 S, 2016 WL 843268, at *3 (D.R.I. Mar. 1, 2016).

- Plaintiff claims that an issue of fact is somehow created by the fact that Dr. Elizabeth Jennison, Honeywell's Associate Director of Health Services, "only received and reviewed one of Dr. Greer's three letters and she never received or reviewed Pena's completed Request for Reasonable Accommodation Form." (*Plaintiff's Objection*, p. 8). However, this fact is immaterial. Upon reviewing Dr. Greer's first note, Dr. Jennison identified that Honeywell needed to know how Plaintiff's anxiety symptoms would allow her to work in many areas of the plant, but not in the molding department. (ECF Doc. No. 28, ¶ 51-55). Given that Honeywell never received an answer to this question, it was not necessary for Dr. Jennison to review each and every doctor's note or additional document to reiterate the same thing that she concluded the first time.

4843-1528-2513.1

> The fact that she did not review subsequent documents does not suggest that Honeywell engaged in discrimination.

- Plaintiff claims that "Honeywell did not consult with a psychiatrist and only relied on the opinion of its own in-house doctor who specializes in occupational medicine." (*Plaintiff's Objection*, p. 8). Plaintiff sets this forward to suggest that "a reasonable jury could conclude that Gouveia, Dr. Jennison or someone else at Honeywell purposefully did not consult with a trained psychiatrist in order to stonewall Pena's efforts to remain employed and force her termination." (*Plaintiff's Objection*, p. 9). However, Plaintiff offered **absolutely no** evidence of such a nefarious intent. Therefore, a reasonable jury could not so conclude, because such a conclusion would not be based upon **evidence**.

As these points show, Plaintiff has offered no evidence that she was discharged because of her disability. While Plaintiff attempts to create an issue of fact where none exists, each and every point that Plaintiff attempts to make in her Objection are either irrelevant to her claim, or grossly speculative and unsupported by evidence; therefore, these unfounded assertions are not properly considered for purposes of summary judgment. Taylor v. Am. Chem. Council, 576 F.3d 16, 24 (1st Cir. 2009) (recognizing that, for purposes of summary judgment, the court "must ignore conclusory allegations, improbable inferences, and unsupported speculation"). Accordingly, Plaintiff failed to carry her burden of proving that she was discharged because of her disability, and summary judgment is appropriate. See Barber v. Verizon New England Inc., No. 05-390-ML, 2006 WL 3524465, at *3 (D.R.I. Dec. 6, 2006); Ward v. Massachusetts Health Research Inst., Inc., 209 F.3d 29, 33 (1st Cir. 2000).

## III. PLAINTIFF'S RETALIATION AND WHISTLEBLOWER CLAIMS (COUNTS IX THROUGH XII)

Magistrate Judge Almond also properly concluded that summary judgment is proper with respect to Plaintiff's retaliation and whistleblower claims because she failed to present any evidence to show a causal connection between her February 21, 2013 conversation with Mr. Gouveia about her break schedule and her termination **nearly four months later** on June 17, 2013. In fact, after February 21, 2013, Plaintiff's break schedule was never mentioned again, and the dialogue between Plaintiff and Honeywell focused singularly on the issue of her assignment to Honeywell's Molding Department. In addition, the undisputed evidence shows that Honeywell terminated Plaintiff's employment only after she refused to work in the Molding Department, left the workplace, and never returned. Even then, Honeywell did not terminate her until she was absent for over three months and after she had not responded to Honeywell's communications for over a month. There is absolutely no evidence of discriminatory animus.

Plaintiff grasps at straws in her Objection by grossly speculating, without any support or inference whatsoever, that perhaps "Honeywell would not have taken such a hard line with her about working in the Molding Room" and that maybe Mr. Gouveia suggested that Plaintiff apply for disability benefits, not because of his position as Honeywell's Human Resources Generalist, but instead because he "was frustrated with [Plaintiff] because she complained about unlawful conduct regarding her diabetes." (*Plaintiff's Objection*, p. 15). There is simply no evidentiary support for either of these speculative assertions and, accordingly, she cannot rely on them to avoid summary judgment. Medina-Rivera v. MVM, Inc., 713 F.3d 132, 140 (1st Cir. 2013) (concluding that a plaintiff could not avoid summary judgment by resting upon conclusory speculation); Taylor, 576 F.3d ar 24 (recognizing that the court "must ignore conclusory allegations, improbable inferences, and unsupported speculation"); Johnston v. Urban League of

- 12 -
4843-1528-2513.1

Rhode Island, Inc., 2011 WL 2297655, at *3 (D.R.I. May 17, 2011) ("To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion . . . Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, or unsupported speculation."). Moreover, not only are Plaintiff's theories fantastical, but they are also belied by all of the record evidence which shows that Plaintiff's diabetes was never mentioned after February 21, 2013, and Plaintiff was terminated **nearly four months later** after she refused to work in the Molding Department, left work and never came back, and stopped communicating with Honeywell. Accordingly, Plaintiff's speculative assertions in her Objection should be disregarded for that reason as well. See Medina-Rivera, 713 F.3d at 134, 136 (The court "cannot accept conclusory allegations, improbable inferences, and unsupported speculation" for purposes of a summary judgment motion and "need not accept [a plaintiff's] version of events if it is 'blatantly contradicted' by the evidence.").

When the magical theories presented for the first time in Plaintiff's Objection are swept away,[6] all that remains is Plaintiff's attempt to rely on temporal proximity to establish a causal connection for her retaliation claim. However, as Magistrate Almond concluded, the **nearly four-month period** between Plaintiff's alleged protected conduct on February 21, 2013, and her termination on July 17, 2013, is insufficient to establish a causal connection based on temporal proximity. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67,

---

[6] In her Opposition to Honeywell's Motion for Summary Judgment, Plaintiff identified the adverse employment action as her termination on July 17, 2013, and relied solely on temporal proximity to (unsuccessfully) establish a causal connection between her alleged discussion with Mr. Gouveia on February 21, 2013 and her termination on that date. (ECF No. 33, Attachment 1, p. 47).

85–86 (1st Cir. 2005) (finding **two-month** temporal proximity between filing of discrimination complaint and plaintiff's termination insufficient to establish a causal connection for ADEA-based retaliation claim); Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 338 (1st Cir. 2005) (holding **four month** interval between commencement of leave and termination "raises no inference of retaliatory motive"); Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918-919 (7th Cir. 2000) (**three months** too long to support an inference of retaliation); Castro-Medina v. P & G Commer. Co., 565 F.Supp.2d 343, 382 (D.P.R. 2008) (plaintiff unable to establish *prima facie* case that termination constituted retaliation where **almost four months** had elapsed between filing of complaint and termination). Accordingly, Magistrate Judge Almond properly concluded that Plaintiff's retaliation claim fails because she has not established any causal connection between her protected conduct and her termination.

## IV. CONCLUSION

For each and all of the foregoing reasons, Defendant Honeywell International, Inc. respectfully requests that the Court ACCEPT Magistrate Judge Lincoln D. Almond's Report and Recommendation and ALLOW Honeywell's Motion for Summary Judgment in its entirety.

- 14 -
4843-1528-2513.1

HONEYWELL INTERNATIONAL INC.,

By their Attorneys,

NIXON PEABODY LLP


/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Aaron F. Nadich (#9571)
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903
(401) 454-1000
(401) 454-1030 (Facsimile)

Date: October 20, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Response to Plaintiff's Objection to Magistrate Judge Lincoln D. Almond's Report and Recommendation was served on counsel via the Court's Electronic filing system on this 20th day of October, 2017.

/s/ Neal J. McNamara