UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAYRA F. PENA, | : | |
|    PLAINTIFF | : | |
| | : | |
| v. | : | C.A. No. 15-CV-00179-WES-LDA |
| | : | |
| HONEYWELL INTERNATIONAL INC., | : | |
|    DEFENDANT. | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE ALMOND'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 42)**

Plaintiff MAYRA PENA, pursuant to Rules 7, 16, 56, and 72 of the Federal Rules of Civil Procedure and Local Rules Cv7, Cv16, Cv56, and Cv72 of the United States District Court for the District of Rhode Island, hereby submits this Reply to Defendant's Response to Plaintiff's Objection to Magistrate Judge Almond's Report and Recommendation on Defendant's Motion for Summary Judgment (Doc. No. 42).

For the reasons set forth herein, the Court should not adopt Judge Almond's Report and Recommendation, and it should deny Defendant's Motion for Summary Judgment en toto (Doc. No. 27).

**I. PENA HAS PROVIDED A SUFFICIENT EXPLANATION FOR WHY SHE CLAIMED TO BE TOTALLY DISABLED ON HER SSDI APPLICATION AS OF MARCH 8, 2013 TO SURVIVE SUMMARY JUDGMENT.**

    **A. A PLAINTIFF'S REASONING THAT THE ASSERTIONS ON PLAINTIFF'S SSDI APPLICATION "WERE MADE IN A FORUM WHICH DOES NOT CONSIDER THE EFFECT THAT REASONABLE WORKPLACE ACCOMMODATIONS WOULD HAVE ON THE ABILITY TO WORK" PROVIDES A SUFFICIENT EXPLANATION TO SURVIVE SUMMARY JUDGMENT BASED ON THE U.S. SUPREME COURT'S RULING IN CLEVELAND.**

One explanation Pena has offered for why she claimed to be totally disabled on her SSDI application as of March 8, 2013 is because she did not consider the effect an accommodation would have on her disability at the time she made the statement. Pena explained in an affidavit:

> When I stated on my SSDI application that I was unable to work as of March 8, 2013, I meant that I was totally disabled only for the purposes of receiving SSDI benefits. <u>The SSDI application did not ask if I needed any accommodations of a disability in order to work</u> and no one at any of the hearings asked. Had I been asked, I would have responded, "Yes."

(Pena Aff. at ¶ 24) (emphasis added).

Here, Pena's explanation is identical to the explanation the plaintiff gave in <u>Cleveland</u> that resulted in the reversal of the district court's grant of summary judgment for the employer. <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795, 807 (1999) (". . . Cleveland explains the discrepancy between her SSDI statements that she was "totally disabled" and her ADA claim that she could 'perform the essential functions' of her job. The first statements, she says, "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work."). Not surprisingly, other courts have found that the explanation Pena has offered here is sufficient to survive summary judgment. <u>See, e.g.</u>, <u>Giles v. Gen. Elec. Co.</u>, 245 F.3d 474, 483–85 (5th Cir. 2001); <u>Johnson v. Hoechst Celanese Corp.</u>, 127 S.W.3d 875, 881 (Tex. App.--Corpus Christi 2004); <u>Bonano v. Reagan Equip. Co., Inc.</u>, No. 99–1028, 1999 WL 1072547, at *3, 1999 U.S. Dist. LEXIS 18868, at *9–10 (E.D.La. Nov. 23, 1999); <u>compare</u> with <u>Reed v. Petroleum Helicopters, Inc.</u>, 218 F.3d 477, 479–80 (5th Cir. 2000); <u>Fields v. St. Bernard Parish Sch. Bd.</u>, No. 99–3396, 2000 WL 1560012, at *7-8 (E.D. La. Oct. 16, 2000).

Furthermore, Pena's explanation in her affidavit is consistent with her deposition testimony on this specific issue. When Pena was asked "[a]t what point did you become unable to work at all?," she responded: "The same moment that they denied me my job without accommodating me, without any need to do that." (Pena Depo. Tr. at 82:1-5). As such, a reasonable jury could interpret

Pena's explanation to mean that she became disabled on March 8, 2013 — only after her employer denied her request for a reasonable accommodation when it sent her home and refused to allow her to stay working in the HEPA Room, her regular work assignment. Such an explanation has been held sufficient where the plaintiff did not make additional specific factual statements that belie her claim that she could perform her job with accommodation. Johnson v. Hoechst Celanese Corp., 127 S.W.3d 875, 881 (Tex. App.--Corpus Christi 2004). Here, Pena explained that after Honeywell denied her request for an accommodation, her pre-existing depression worsened:

> Q. So you agree that since March 8, 2013 you have been unable to perform any work?"
> A. **Yes.**

(Pena Depo. Tr. at 77:25-78:2).

> Q. Are you saying that during that period you could have worked?
> A. **No. After that, since I was denied the accommodation, then my depression started to get worse and worse.**

(Id. at 81:6-10).

> Q. At what point did you become unable to work at all?
> A. **The same moment that they denied me my job without accommodating me, without any need to do that.**

(Id. at 82:1-5).

Finally, in Turner v. Hershey Chocolate USA, the Third Circuit held that any statements made in an SSDI application must be inferred to include the language of, "without reasonable accommodation." 440 F.3d 604, 610 (3rd Cir. 2006) ("As discussed in Cleveland, this statement of inability to work must be read as lacking the qualifier of reasonable accommodation, which did not apply for purposes of her SSDI application, but does apply for purposes of her ADA claim. Thus, in her SSDI application, Turner was saying, in effect, "I am unable to work without reasonable accommodation." This statement is not inconsistent with her ADA claim, in which she is saying, in effect, "I am able to work with reasonable accommodation. See Cleveland, 526 U.S. at 802.").

**II.  THE PROPER FOCUS ON JUDICIAL ESTOPPEL AS APPLIED TO SSDI AND ADA CLAIMS IS NOT WHETHER THERE WAS A GENERAL CLAIM OF INABILITY TO WORK ON THE SSDI CLAIM, BUT RATHER ON THE FACTUAL CONTRADICTIONS BETWEEN THE TWO CLAIMS AND, THEREFORE, PENA'S GENERAL ASSERTION IN HER SSDI SUBMISSION THAT SHE WAS UNABLE TO WORK DUE TO A DISABILITY DOES NOT COMMIT HER TO ANY POSITION AS TO WHETHER SHE COULD WORK IF REASONABLY ACCOMMODATED.**

The proper focus on judicial estoppel as applied to SSDI and ADA claims is not whether there was a general claim of inability to work on the SSDI claim, but rather on the factual contradictions between the two claims. Id. at 795 (citing Opsteen v. Keller Structures, Inc., 408 F.3d 390, 392 (7th Cir.2005)).  A general assertion in the SSDI submission that an individual is unable to work due to a disability does not therefore commit her to any position as to whether she could work if reasonably accommodated. Bisker, 342 Fed. App'x. at 795 (citing Turner v. Hershey Chocolate USA, 440 F.3d 604, 609–10 (3d Cir. 2006)).

In DeRosa, DeRosa v. National Envelope Corp., 595 F.3d 99 (2d Cir. 2010), the Second Circuit reversed a district court's grant of summary judgment to the employer with respect to a plaintiff's ADA claim because statements made by the plaintiff in his application for SSDI benefits did not give rise to judicial estoppel. 595 F.3d at 101.  There, the plaintiff's SSDI application included, inter alia, "the sentences 'I became unable to work because of my disabling condition on October 13, 2004' and 'I am still disabled.' " Id. at 101.  Noting that "a simple averment that one is disabled for the purposes of an SSDI application does not preclude the argument that one could, with reasonable accommodation, be gainfully employed," the Second Circuit found that the factual statement in plaintiff's SSDI application "[did] not contradict DeRosa's position on the critical issue of whether he was able to fulfill the essential functions of his employment with reasonable accommodation." DeRosa, 595 F.3d at 104–05.  Accordingly, the Second Circuit reversed the district court's grant of summary judgment to defendants on the basis of judicial estoppel. Id.

Here, Pena's application for SSDI benefits stated in general terms that she became unable to work because of her disabling condition on March 8, 2013 and that as of September 20, 2013, the

date of her application, she remained disabled. (Doc. No. 28-2 at 48). "The statement 'I am disabled' on an SSDI application should generally be taken as a statement that 'I am disabled for the purposes of the Social Security Act' " because "[t]he Social Security Act does not concern itself with reasonable accommodation." DeRosa, 595 F.3d at 104. "The doctrine [of judicial estoppel] is quite limited, and for a plaintiff to be prevented from making a later assertion, there must be a direct and irreconcilable contradiction between the earlier and later statements." Markus v. Teachers Ins. & Annuity Ass'n College Retirement Equities Fund, No. 03 Civ. 646, 2005 WL 742635, at *4 (S.D.N.Y. Mar. 29, 2005) (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 7 (2d Cir. 1999)).

Accordingly, Pena's statement in her SSDI application, by itself, does not give rise to judicial estoppel. "As the Supreme Court made clear in Cleveland, a simple averment that one is disabled for the purposes of an SSDI application does not preclude the argument that one could, with reasonable accommodation, be gainfully employed." DeRosa, 595 F.3d at 104. The statements on plaintiff's SSDI application "do not contradict [plaintiff's] position on the critical issue of whether [s]he was able to fulfill the essential functions of [her] employment with reasonable accommodation." Id. at 105. Therefore judicial estoppel does not apply here to bar plaintiff's ADA claim. See Felix, 154 F.Supp.2d at 651 (citing Cleveland, 526 U.S. at 802) (where plaintiff's SSDI application "stated in general terms that she could not work as a result of her disabling condition without offering particular facts as to that condition," there were no "directly conflicting statements about purely factual matters") (internal quotations marks omitted).

The only evidence Honeywell has put before the Court regarding Pena's statements to the SSA about her disability is a summary of her SSDI application and the ALJ's ruling granting her disability benefits. (Doc. No. 28-2 at 48-56). Nowhere in these documents does Pena state that she was unable to perform her job as an "Associate Assembler." Nowhere in these documents does

Pena state that she was unable to work as of March 8, 2013 because of anxiety and depression, the same medical condition that forms the underlying disability for her ADA claim. See, e.g., Guinup v. Petr-All Petroleum Corp., 786 F.Supp.2d 501 (N.D.N.Y 2011) (holding that plaintiff was judicially estopped from asserting an ADA claim because she clearly indicated on her SSDI application that [as of the relevant date] she was incapable of performing nearly all of the material aspects of her job and because neither her medical records, nor her physicians supported that she could return to work). Indeed, there is no evidence before the Court as to what representations Pena actually made to the SSA. Rather, Pena merely used as the onset date of her disability her last physical date of work. See Schneider v. Landvest Corp., 2006 WL 322590 at *33 (holding that plaintiff's testimony that she "filled out their papers and put in the amount that [she] was earning" did not rise to the level of inconsistent statements on her SSDI application).

Furthermore, the ALJ's ruling allowing benefits does not state the basis for awarding benefits, merely that "[the claimant] has been under a disability as defined in the Social Security Act since March 8, 2013." (Doc. No. 28-2 at 48-56). See Poole v. Valley Industries, 2006 WL 2925308, at *4 (E.D. Mich.) (holding that because the SSDI award does not state its basis for awarding Plaintiff benefits retroactively to April 2001, it does not prevent Plaintiff from establishing a triable issue of fact regarding his disability.)

### A. PENA'S DEPOSITION TESTIMONY ON THIS MATTER SHOWS THAT PENA WAS CONFUSED ABOUT THE LINE OF QUESTIONING BY HONEYWELL'S COUNSEL, WHO WAS CLEARLY ATTEMPTING TO GET PENA TO ADMIT TO A LEGAL CONCLUSION THAT SHE WAS UNABLE TO WORK UNDER ANY CIRCUMSTANCES.

Honeywell has taken Pena's statements regarding her SSDI application out of context in an attempt to portray them as inconsistent with her ADA claim. Here, Pena did her best to explain that she could have performed the essential functions of the Associate Assembler position had her employer accommodated her disabilities by merely keeping her in the same department in which she

had worked for the past eleven (11) years and that she only applied for SSDI benefits in September 2013 after all else failed and her depression worsened after she was fired. Indeed, Honeywell counsel's examination of Pena regarding her application for SSDI benefits and its relation to her ADA claim is very confusing and was a blatant attempt to trip up Pena into admitting that she is lying and trying to manipulate the system.[1] Nothing is further from the truth.

1. **Pena testified that as of March 8, 2013, she could have continued to work for Honeywell had her employer accommodated her by keeping her in HEPA and not assigning her to the Molding Room.**

Q. So, on March 8, could you work in the molding room if they asked you to?
**A. No, I couldn't. I got a panic attack that same day when I had taken that letter that does not appear, and I was unable to work.**

Q. If Honeywell had agreed to put you back in HEPA, would you have been able to perform that job?
**A. That's why the lawyer was fighting for me to be able to get back to my job.**

Q. And when did your doctor increase your medications because of the symptoms you just described?
**A. After March 8th, after going through all these problems.**
(Pena Depo. Tr. at 86:7-19).

2. **Pena testified that she was unable to work in September 2013 when she filed for SSDI benefits and that she put down March 8, 2013, her last day of work as the date of the onset of her disability on the advice of her lawyer.**

Q. I understand that. But that's not what I'm asking. What I'm asking is on the one hand you agreed that you applied for Social Security Disability benefits, and in that you said that you were completely unable to work as of March 8, 2013, correct?
**A. In September.**

Q. In September you applied but you said that as of March 8th?
**A. No. When you fill out the application, they ask you when was your last day of work.**

---

[1] Pena has attached an excerpted portion of her deposition transcript as an exhibit, and she invites the Court to read the entire examination on this issue and make its own determination as to whether the line of questioning is confusing.

Q. That's not what the application says. The application says, "I became unable to work because" --
THE WITNESS: Which application?
MR. McNAMARA: Exhibit M.
**A. I applied with the help of a lawyer. It was with a lawyer that I applied for Social Security.**

(Pena Depo. Tr. at 80:5-22).

3. <u>**Pena testified that she became disabled for SSDI purposes after March 8, 2013 and only after her employer did not grant her request for a reasonable accommodation**</u>.

Q. Do you understand that when you make a claim of disability discrimination, you are alleging that if you had received an accommodation, you could have performed your job?
MS. CONNOR: Objection. Legal conclusion.
**A. I was doing quite well, and they were the ones that harmed me.**

Q. But you're saying they harmed you as of the first day you went out?
**A. They ended up hurting me by not accommodating me, and I felt useless after.**

Q. But that took place after March 8th, correct?
**A. Yes.**

(Pena Depo. Tr. at 78:3-16).

Q. But in any event, you are saying on the one hand that you are completely unable to work, correct?
**A. Yes.**

Q. And on the other hand, your complaint against Honeywell says that you could have done your job if you had received an accommodation.
**A. When I was seeing Veronica Kot, I wanted my job back.**

Q. Are you saying that during that period you could have worked?
**A. No. After that, since I was denied the accommodation, then my depression started to get worse and worse.**

(Pena Depo. Tr. at 80:23-81:10).

Q. At what point did you become unable to work at all?
**A. The same moment that they denied me my job without accommodating me, without any need to do that.**

Q. Was that on March 8, 2013?
**A. For about four or five months during the time that the lawyer was in constant communication with them, and they were declining.**

Q. So, you can't tell me at what point specifically you became completely unable to work?
**A. From the very first time they sent me to the molding room, then my depression increased, and I saw the psychiatrist. He sent the first letter, and from that point on it's been getting worse.**

Q. Okay. I'll just try it once more. So at what point -- I understand you're saying that there was an escalation of your depression, I understand that. At what point did it reach the point where you were no longer able to work at all?
**A. I cannot be around a lot of people. I am bothered by even the noise from my grandchildren. I was able to drive to New York before all by myself, and I can't do that anymore.**

MR. McNAMARA: I understand all that.
**A. They messed up my life. My life is allmessed up.**

Q. But I'm looking to see if you can give me even an approximate date when you were no longer able to work at all.
**A. When I was kicked out of that place, I had to go see the psychiatrist, and that's when I started having panic attacks, and he started giving me new medication and increasing the dose. He said to me you can no longer work because you are sleeping during the day.**

Q. And when you say you were kicked out, are you referring to March 8th when you were sent home?
**A. From that point on, that's when I started getting worse. Every time the lawyer would tell me that she would send letters, and then they would decline, it got worse.**

(Pena Depo. Tr. at 82:1-83:17).

## CONCLUSION

For the reasons stated above, Plaintiff Mayra Pena respectfully requests that the Court not adopt the R & R and that it deny Defendant Honeywell, Inc.'s Motion for Summary Judgment en toto (Doc. No. 27).

MAYRA PENA
By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (#6819)
mark@markgagliardilaw.net

LAW OFFICE OF MARK P. GAGLIARDI
120 Wayland Avenue, Suite 7
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)

Dated: October 30, 2017

CERTIFICATE OF SERVICE

I hereby certify that on this **30**th day of October 20**17**, I caused the foregoing document to be electronically filed with the Court's CM/ECF system. The following counsel-of-record have been served by electronic means.

Neal J. McNamara
nmcnamara@nixonpeabody.com

Aaron F. Nadich
anadich@nixonpeabody.com

Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903-1345

/s/Mark P. Gagliardi