UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
MAYRA F. PENA,                )
                              )
          Plaintiff,          )
                              )
     v.                       )     C.A. No. 15-179 WES
                              )
HONEYWELL INTERNATIONAL INC., )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Lincoln D. Almond filed a Report and Recommendation ("R&R") (ECF No. 42) recommending that Defendant Honeywell International Inc.'s ("Honeywell") Motion for Summary Judgment (ECF No. 27) be granted with respect to all counts in Plaintiff's Amended Complaint (ECF No. 9). Plaintiff Mayra F. Pena timely filed an Objection to the R&R ("Objection") (ECF No. 45). For the reasons set forth below, the Court accepts the R&R.

With respect to Counts I through VIII, Magistrate Judge Almond recommended that summary judgment is appropriate because, in light of the Supreme Court's decision in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999), no reasonable juror could reconcile Plaintiff's position in this litigation with her prior declaration in the context of applying for Social Security Disability Insurance ("SSDI"). (R. & R. 14-15.) Additionally, Magistrate Judge Almond

endorsed summary judgment with respect to Plaintiff's remaining retaliation claims (Counts IX through XII) because Plaintiff failed to set forth evidence upon which a reasonable juror could glean a sufficient causal relationship between Plaintiff's termination and her alleged protected activity, a complaint to her supervisor about her break schedule. (Id. at 17-19.)

In her Objection, Plaintiff avers that she has sufficiently explained away any inconsistencies between her SSDI application and this litigation.[1] (Mem. in Opp'n to R. & R. 11, ECF No. 45-1.) Plaintiff suggests that Magistrate Judge Almond overlooked the Equal Employment Opportunity Commission ("EEOC") guidelines that discuss the impact of statements made in the context of SSDI applications on claims under the Americans with Disabilities Act ("ADA"). (Id. at 12-14.) In Plaintiff's Reply to Defendant's

_____

[1] Plaintiff elaborates:

> [W]hen given the choice between having to accept one of two contradictory statements, it is curious that Honeywell conveniently accepts the statements Pena made in her SSDI application as the ones that are truthful and accurate. Why doesn't Honeywell take the position that Pena lied on her SSDI application, but that she is telling the truth in her ADA litigation? Why is the statement in Forum "A" truthful, but the statement in Forum "B" untruthful?

(Obj. 11.)

Response to Plaintiff's Objection[2] ("Reply") (ECF No. 49),
Plaintiff attempts to further reconcile her conflicting statements
by identifying an affidavit in which she attested, "The SSDI
application did not ask if I needed any accommodations of a
disability in order to work and no one at any of the hearings
asked. Had I been asked, I would have responded, 'Yes.'" (Reply
1-2; Pena Aff. ¶ 24, ECF No. 45-3.) Plaintiff also argues that
her deposition testimony elucidates that she did not understand
the line of questioning and was tricked by Honeywell's counsel
into "admitting that she is lying and trying to manipulate the
system." (Id. at 6-7.) Finally, with respect to the retaliation
claims, Plaintiff, in a conclusory manner, suggests "a jury could
find that Pena's February 21, 2013 complaint set off a chain of
events that ultimately led to her termination on June 17, 2013."
(Mem. in Opp'n to R. & R. 15.)

    This Court's de novo[3] review leads it to the same conclusion
as Magistrate Judge Almond:   summary judgment is appropriate on
all counts. As an initial matter, with respect to Counts I through

---

[2] Plaintiff's Reply focuses solely on Magistrate Judge
Almond's recommendation as to Counts I through VIII and does not
discuss the retaliation claims. (See generally Reply.)

[3] Under Rule 72(b)(3) of the Federal Rules of Civil Procedure,
the Court reviews de novo a properly objected to R&R on a
dispositive motion.

VIII, it is clear that Plaintiff misconstrues and misapplies the
governing standard. Throughout her filings with this Court,
Plaintiff purports to rationalize or spell out why she provided
inconsistent statements in her SSDI application and in this
litigation.[4]   However, this is not what <u>Cleveland</u> requires.
Rather, "to defeat [a defendant's] motion for summary judgment, [a
plaintiff] must explain why the representations of total
disability [s]he has made in the past <u>are consistent with</u> [her]
current claim that [s]he could perform the essential functions of
[her position] with reasonable accommodation." <u>Sullivan v.
Raytheon Co.</u>, 262 F.3d 41, 47 (1st Cir. 2001) (citing <u>Cleveland</u>,
526 U.S. at 798 (emphasis added)). Plaintiff simply has not
satisfied this standard.

In other words, Plaintiff has not sufficiently explained why
her representation for purposes of SSDI that she became unable to
work because of her disabling condition on March 8, 2013 and
remained disabled after that point, is consistent with her position
for purposes of this litigation that on March 8, 2013 (her final
day of work), she was "completely capable of working in other

---

[4]   Indeed, Plaintiff goes as far as to admit that her
statements contradict, while questioning why Plaintiff's
statements in the context of this litigation, rather than her SSDI
application, should be accepted as "truthful." (<u>See</u> <u>supra</u> note
1.)

settings" with the exception of the Molding Department. Moreover,
a closer look at Plaintiff's deposition testimony crystallizes the
inconsistency when viewed against Plaintiff's SSDI application.[5]
While at times confusing, Plaintiff's deposition clearly states
that she was wholly unable to work.

Plaintiff's post hoc affidavit, which conflicts with her SSDI

---

[5] Excerpts from Plaintiff's deposition are instructive:

Q. When you said in the sentence, you know, "I
became unable to work because of my disabling
condition," did you mean that you were unable to do any
work?

A. Yes, at that time when I stated that, yes,
because I was under a lot of medications, and my
depression increased.

. . .

Q. So you agree that since March 8, 2013 you have
been unable to perform any work?

A. Yes.

. . .

Q. But I'm looking to see if you can give me even
an approximate date when you were no longer able to work
at all.

A. When I was kicked out of that place, I had to go
see the psychiatrist, and that's when I started having
panic attacks, and he started giving me new medication
and increasing the dose. He said to me you can no longer
work because you are sleeping during the day.

(Pena Dep. 76:23-77:4, 77:25-78:2, 83:3-11, ECF No. 49-1.)

application and her deposition testimony, does not alter this landscape; indeed, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland, 526 U.S. at 806-07 (citations omitted). Further, in light of the Supreme Court's Cleveland decision handed down two years after the EEOC's guidance, Plaintiff's citation to and reliance on factors set forth by the EEOC is of no moment.

Finally, summary judgment is appropriate with respect to Plaintiff's retaliation claims (Counts IX through XII). Plaintiff's conclusory declarations in her Objection do nothing to alter the fact that she still has not identified evidence upon which a reasonable juror could causally link her February 21, 2013 complaint to her supervisor with her June 17, 2013 termination. When Plaintiff's statements, bereft of evidentiary support, are dispensed with, all that remains is her reliance on temporal proximity, which in this instance cannot carry the day. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."

(citations omitted)); see also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citations omitted)). The Court has considered Plaintiff's remaining arguments and deems them to be without merit.

Accordingly, the Court fully ACCEPTS the R&R (ECF No. 42) and adopts its reasoning. Defendant Honeywell's Motion for Summary Judgment (ECF No. 27) on all counts of Plaintiff's Amended Complaint (ECF No. 9) is GRANTED in its entirety. Judgment will enter for Defendant.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: January 29, 2018

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MAYRA PENA                              :
                                        :
        v.                              :        C.A. No. 15-179WES
                                        :
HONEYWELL                               :
INTERNATIONAL, INC.                     :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant

Honeywell International, Inc.'s Motion for Summary Judgment.   (ECF Doc. No. 27).   Plaintiff opposes

the Motion.   (ECF Doc. No. 33).   A hearing was held on June 19, 2017.

        **Background**

        Plaintiff commenced this employment discrimination action in state court on or about April 16,

2015.   Defendant removed the case to this Court on May 5, 2015.   The operative pleading is Plaintiff's

Amended Complaint (ECF Doc. No. 9) which was filed on August 28, 2015 and contains twelve federal and

state statutory claims.[1]

        In her Amended Complaint, Plaintiff claims that Honeywell violated various anti-discrimination

statutes by failing to reasonably accommodate her disabilities (Counts I through IV).   She also claims her

discharge was unlawfully motivated by her disabilities (Counts V through VIII).   Finally, she claims that

she was unlawfully subject to retaliation for reports of unlawful discriminatory conduct she made to the

Human Resources Department at Honeywell (Counts IX through XII).

---

[1]       Generally, Rhode Island courts look to federal case law construing the Americans with Disabilities
Act ("ADA") in evaluating analogous state law discrimination claims, and this Court will do so as well in evaluating
Honeywell's Motion for Summary Judgment.   See Barber v. Verizon New England, No. 05-390-ML, 2006 WL
3524465 at *3, n.1 (D.R.I. Dec. 6, 2006); Kriegel v. State of Rhode Island, 266 F. Supp. 2d 288, 296 (D.R.I. 2003); and
Hodgens v. General Dynamics, 144 F.3d 151, 158 n.1 (1st Cir. 1998).   See also Jones v. Nationwide Life Ins. Co., 696
F.3d 78, 86-87 (1st Cir. 2012) (applying ADA framework to analysis of Massachusetts state law disability
discrimination claim).

**Summary Judgment**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

Additionally, if the affirmative evidence presented by the nonmoving party raises a question of credibility as to the testimony provided by the moving party, summary judgment is inappropriate, and that credibility issue must be presented to the factfinders at trial.   Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5th Cir. 1945) ("The success of an attempt to impeach a witness is always a jury question, as is the credibility of the witnesses where they contradict one another, or themselves.").

**Facts**

The following facts are gleaned from the parties' statements of fact filed pursuant to Local Rule Cv 56.  (ECF Doc. Nos. 28, 35, 36).   Honeywell's Cranston manufacturing facility is comprised of several production/assembly areas, including the Respiratory Department, Molding Department, Logo Department, Quickloc/Cedars Department and the SCBA Area.   (ECF Doc. No. 28 at ¶ 1).   In the Molding Department, Honeywell manufactures finished goods and works in process for assembly.   Works in process are products in the process of manufacture that have not yet reached the finished-good state.   Id. at ¶ 2.   Plaintiff frequently worked in the Respiratory Department.   Id. at ¶ 6.

In 2013, when Plaintiff worked at Honeywell, there were approximately twenty to twenty-five employees working in the Molding Department.   Id. at ¶ 7.   In the Molding Department, the machines run continuously, and a new part comes out of the machine every thirty seconds; in other Departments, the operator controls when the machines operate.   Id. at ¶ 8.   Some Honeywell employees indicated that they preferred to work in areas other than the Molding Department because other areas allowed employees to work at their own pace, whereas in the Molding Department, employees had to keep up with the pace of the machines.   Id. at ¶ 10.   Employees also preferred to work in areas other than the Molding Department because the machines were closer together in other Departments, and employees were able to more easily socialize.   Id. at ¶ 11.

In 2012, Honeywell decided that all employees who worked in the production and assembly areas should be cross-trained to work in all departments.   Id. at ¶ 13.   Honeywell felt it was important to have cross-trained employees to meet the demands of Honeywell customers.   Id. at ¶ 14.   It was Honeywell's

business practice to move associate assemblers to departments where customer demand was greatest and, as a result, an employees' inability to work in any particular area would burden the production process.  <u>Id.</u> at ¶ 15.  It was particularly important for employees to rotate into the Molding Department because it runs twenty-four hours a day and does not shut down for employee lunch and other breaks.  <u>Id.</u> at ¶ 16.  To fill positions when employees took breaks, vacation time, or otherwise, employees working in other areas would move to the Molding Department.  <u>Id.</u>  at ¶ 17.  Honeywell trained all of its employees, including Plaintiff, in all Assembly Departments for which training was required, including the Molding Department. <u>Id.</u> at ¶ 18.

Honeywell hired Plaintiff in or about 2008 as a Machine Operator and Associate Assembler in its Cranston, Rhode Island facility.  <u>Id.</u> at ¶ 19.  Plaintiff was previously employed at the same location by North Safety Products starting in or about 2002, and Honeywell hired Plaintiff when it took over the facility in or about 2008.  <u>Id.</u> at ¶ 20.  Plaintiff completed her training for the Molding Department in October 2012.  <u>Id.</u> at ¶ 21.  Following her training, Honeywell asked Plaintiff to work in the Molding Department. <u>Id.</u> at ¶ 22.  Working in the Molding Department was consistent with Plaintiff's position as an Associate Assembler.  <u>Id.</u> at ¶ 23.  Over a month after Plaintiff's training in the Molding Department, she took medical leave commencing on November 29, 2012.  <u>Id.</u> at ¶ 24.  This medical leave was, at least in part, due to her depression because of the change of season.  <u>Id.</u> at ¶ 25.  Prior to her medical leave commencing on November 29, 2012, Plaintiff had previously taken several other medical leaves of absence totaling twenty-three weeks, including from October 14, 2011 to November 21, 2011; from December 16, 2011 to February 13, 2012; and from June 22, 2012 to August 6, 2012.  <u>Id.</u> at ¶ 26.  Given these previous medical leaves, Plaintiff had no remaining Family and Medical Leave Act ("FMLA") leave.  <u>Id.</u> at ¶ 27. Plaintiff returned from medical leave on January 14, 2013.  <u>Id.</u> at ¶ 28.

Upon her return from medical leave, Plaintiff worked in the Molding Department for four hours per day, two to three times per week.  <u>Id.</u> at ¶ 29.  Plaintiff worked this schedule without incident for over a month and did not complain about working in the Molding Department until late February 2013.  <u>Id.</u> at ¶

30.   In late February 2013, Plaintiff approached Jose Gouveia, Senior Human Resources Generalist at Honeywell, to report that one of the Production Leaders, Mayra Fermin, asked her to go to the Molding Department.   <u>Id.</u> at ¶ 31.   Plaintiff claims that she told Mr. Gouveia that she did not want to work in that Department because "it was harmful to [her] emotionally."   <u>Id.</u> at ¶ 32.   On March 7 and March 8, 2013, Plaintiff met with Mr. Gouveia; Kevin Dyer, Plaintiff's supervisor; and Conor Ryan, the Health Safety and Environmental Site Leader.   <u>Id.</u> at ¶ 33.   At the March 7, 2013 meeting, Honeywell requested a letter from Plaintiff's doctor.   <u>Id.</u> at ¶ 34.   The next day, on March 8, 2013, Plaintiff provided a letter from her psychiatrist, Dr. James Greer, dated March 4, 2013.   <u>Id.</u> at ¶ 35.   Dr. Greer's March 4, 2013 note stated: "Currently [Plaintiff] is reporting exacerbation of her anxiety systems which are interfering with her ability to function. She reports that these specifically occur when she is being sent to the molding room as opposed to the more typical duties to which she is accustomed."   <u>Id.</u> at ¶ 37.

Dr. Greer's note was reviewed by Mr. Ryan, as Health Safety and Environmental Site Leader, to determine what accommodations Plaintiff requested and whether Honeywell could make such accommodations.   <u>Id.</u> at ¶ 38.   Dr. Greer stated, "I am requesting that you assist her in other placements than in this setting…."   <u>Id.</u> at ¶ 40.   Dr. Greer's note did not explain how the Molding Department "exacerbate[ed]" Plaintiff's anxiety symptoms, while no other Department had this effect.   <u>Id.</u> at ¶ 41. Plaintiff was informed that the March 4, 2013 note was not sufficient, and she would not be excused from working in the Molding Department as scheduled.   <u>Id.</u> at ¶ 43.   In response, Plaintiff told the Honeywell personnel that she was going to go home, and she called her daughter to pick her up.   <u>Id.</u> at ¶ 44.   Plaintiff never returned to work after March 8, 2013.   <u>Id.</u> at ¶ 45.

Plaintiff subsequently retained Attorney Veronika Kot of Rhode Island Legal Services, who instructed Plaintiff not to have any communication with Honeywell and that Ms. Kot would be the one to talk to Honeywell, not her.   <u>Id.</u> at ¶ 47.   Unaware that Plaintiff had retained Ms. Kot and of her directive to Plaintiff, Honeywell attempted to contact Plaintiff to clarify her condition to enable it to provide a proper accommodation.   <u>Id.</u> at ¶ 48.   To that end, Mr. Gouveia sent Plaintiff a Reasonable Accommodation

Request Form for her to complete with Dr. Greer.   Id. at ¶ 50.   In addition, on April 2, 2013, Dr. Elizabeth Jennison, Honeywell's Associate Director of Health Services, wrote to Dr. Greer, asking for "additional documentation to understand the medical necessity for [Plaintiff's] request."   Id. at ¶ 51.   Dr. Jennison's letter requested that Dr. Greer, "please clarify how [Plaintiff's] anxiety symptoms could allow her to work in many areas of the plant, while interfering with her ability to function in one area of the plant, the molding room, for which she is equally qualified and trained? Please provide documentation from your medical records that support this opinion."   Id. at ¶ 52.

In April 2013, Plaintiff provided a letter from Dr. Greer dated April 2, 2013, in lieu of completing the Reasonable Accommodations Request Form.   Id. at ¶ 56.   The April 2, 2013 letter from Dr. Greer stated that Plaintiff "carries diagnosis of Major Depressive Disorder, Recurrent, Severe."   Id. at ¶ 57.   Dr. Greer's note did not provide any detail as to how or why Plaintiff's symptoms allowed her to work in any Department except for the Molding Department.   Id. at ¶ 59.   The physician's portion of the Reasonable Accommodations Request form was left completely blank.   Id. at ¶ 60.

On April 8, 2013, Mr. Gouveia sent a letter to Plaintiff recounting that Honeywell had communicated with Plaintiff and her physician to release her medical records to its Medical Department. Id. at ¶ 61.   Mr. Gouveia's April 8, 2013 letter stated: "You have informed us you signed a release to give your physician permission to send your medical records to our Medical Department; however, no[ ] medical records have been received. As a result, and at the moment, we have insufficient information to assess your request."   Id. at ¶ 62.   Mr. Gouveia's April 8, 2013 letter advised Plaintiff, "[w]hile we await the medical information required to assess your request, you have the option to return to work and perform your regular job (including the rotations in the Injection Molding Department required of all employees in your position); or, remain on an unpaid medical leave of absence; or, use any paid time off that is available for you, such as vacation or PTO."   Id. at ¶ 63.

Mr. Gouveia sent a follow-up letter to Plaintiff on April 22, 2013, noting that he had sent a previous letter, but had not received any information from her physician.   Id. at ¶ 64.   In his April 22, 2013 letter,

Mr. Gouveia reminded Plaintiff of her option to return to work or to continue on an unpaid leave of absence and requested that Plaintiff please let Honeywell know if her physician would be providing the requested information.  Id. at ¶ 65.  On April 22, 2013, Plaintiff's then-counsel, Ms. Kot, called Mr. Gouveia to discuss the accommodation request.  Id. at ¶ 66.  On April 22, 2013, upon learning that Ms. Kot was representing Plaintiff, Honeywell's in-house employment counsel, Jacqueline Rolfs, sent a letter to Ms. Kot, directing her to review the written correspondence sent to Plaintiff in order to understand Honeywell's request for additional information.  Id. at ¶ 67.  On April 23, 2013, Ms. Kot responded that Plaintiff had provided two doctors' notes and that "[i]n response she received a letter demanding a release of all her sensitive medical records, including mental health records, signed by Mr. Gouveia. This of course represents an unnecessary and prohibited intrusion upon her privacy."  Id. at ¶ 68.

On April 25, 2013, Ms. Rolfs sent a letter to Ms. Kot attaching the correspondence between Honeywell, Plaintiff and Dr. Greer.  Id. at ¶ 69.  Her April 25, 2013 letter further detailed Honeywell's attempts to communicate with Plaintiff about her accommodation request.  Id. at ¶ 70.  Ms. Rolfs' April 25, 2013 letter also clarified: "Contrary to the assertion in your letter, Dr. Jennison did not ask to see all of Ms. Pena's medical records. Instead, she asked how Ms. Pena's symptoms could allow her to work in all areas of the plant except the molding area, where she had successfully worked on several occasions, and asked for documentation from the medical records to support this opinion.  To date, Honeywell has received no response to this letter."  Id. at ¶ 71.  Ms. Rolfs also mentioned in her April 25, 2013 letter that "Honeywell remains willing to work with your client to assess her reasonable accommodation request. However, without the cooperation of your client and her physician in providing responses to Honeywell's reasonable questions about the request, we cannot proceed further in that process."  Id. at ¶ 72.

Ms. Kot responded on April 30, 2013, alleging that Honeywell's requests were in violation of the Americans with Disabilities Act ("ADA"), stating that she would be providing another letter from Plaintiff's doctor shortly, and accusing Honeywell of threatening to terminate Plaintiff.  Id. at ¶ 73.  On April 30, 2013, Ms. Rolfs sent Ms. Kot yet another letter, stating that Honeywell did not threaten to

terminate Plaintiff and offering her opinion that Honeywell's reasonable inquiries about the nature of Plaintiff's condition and the need for accommodation in no way violated the ADA. Id. at ¶ 75.   On May 6, 2013, Ms. Kot provided a memorandum to Ms. Rolfs from Dr. Greer dated April 29, 2013, in which he stated that Plaintiff "has reported repeatedly and consistently that she finds this new environment to be highly stressful, referencing a variety of factors which included increased noise levels, chemical odors and the presence of robotics in the molding room which have resulted in a significant exacerbation of her anxiety symptoms." Id. at ¶ 76.   The conditions listed by Dr. Greer in his April 29, 2013 Memorandum to Ms. Kot exist in other areas of the facility.   Id. at ¶ 78.

In his April 29, 2013 Memorandum to Ms. Kot, Dr. Greer did not propose any accommodation short of a permanent removal of Molding Department responsibilities from Plaintiff's job. Id. at ¶ 80. Along with his Memorandum, Dr. Greer included four progress notes from Plaintiff's medical records.   Id. at ¶ 81.   Ms. Rolfs responded to Ms. Kot on May 22, 2013, indicating that the attachments to her most recent letter "do not provide any information as to why there is some connection between Ms. Pena's diagnosed depression and work in the molding room." Id. at ¶ 82.   The May 22, 2013 letter from Ms. Rolfs to Ms. Kot provided that Dr. Greer had not called Honeywell's doctor, Dr. Jennison, as requested. Id. at ¶ 83.   According to Plaintiff, Honeywell had set up an appointment with Dr. Greer for him to go to Honeywell to discuss Plaintiff's alleged condition, but "he didn't go." Id. at ¶ 84.   Ms. Rolfs' May 22, 2013 letter explained that the conditions that Plaintiff complained of existed throughout other areas that Plaintiff worked, without issue.   Id. at ¶ 85.   In several correspondences, Honeywell requested that Dr. Greer provide an explanation or medical records to elucidate how Plaintiff's alleged symptoms resulted from working in the molding room, when the conditions of the molding room that she complained of existed in other areas of the facility in which she worked, without issue.   Id. at ¶ 86.   Honeywell received its last correspondence from Plaintiff's attorney on or about May 6, 2013.   Id. at ¶ 87.   By June 17, 2013, having received no additional information and with no contact whatsoever from Plaintiff, who had been out on a leave for over three months, Honeywell terminated her employment for job abandonment.   Id. at ¶ 88.

Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits several months later on September 20, 2013.  Id. at ¶ 89.  On her SSDI Application, which was completed under the penalty of perjury, Plaintiff stated, "I became unable to work because of my disabling condition on March 8, 2013," Plaintiff's last day of work at Honeywell.  Id. at ¶ 90.  Plaintiff further declared on her SSDI Application: "I am still disabled."  Id. at ¶ 91.  Based upon her statements made in her SSDI Application, an Administrative Law Judge ("ALJ") determined that Plaintiff had somatoform disorder and she was totally disabled as of her last day of work, stating: "The claimant has been under a disability as defined in the Social Security Act since March 8, 2013, the alleged onset date of disability."  Id. at ¶ 92.  Plaintiff received SSDI benefits retroactive to March 8, 2013.  Id. at ¶ 93.  When asked about the statements in her SSDI Application during her deposition, Plaintiff stated: "The thing is that from that date, the dose of medication for the depression was increased, and also I also got four more pills because of the tachycardia, and also I got medication to help me sleep."  Id. at ¶ 94.  Plaintiff was further asked at her deposition whether, by her statement, she meant that she was unable to do any work, to which she replied: "Yes, at that time when I stated that, yes, because I was under a lot of medications, and my depression increased."  Id. at ¶ 95.  In addition, Plaintiff filed for bankruptcy in September 2014 and in that Application she again stated that she was not employed and that she was disabled.  Id. at ¶ 96.  Plaintiff stated in an Interrogatory Response, in part: "I applied for Social Security on September 19, 2013.  On October 16, 2015, I received a Fully Favorable decision and was determined to have been disabled since March 8, 2013."  Id. at ¶ 98.

**Discussion**

**A.     Is Plaintiff a "Qualified Individual with a Disability?"**

Honeywell's Motion for Summary Judgment contends that Plaintiff was not a qualified individual with a disability at the relevant time because she subsequently swore in an SSDI Application that she was totally disabled from working as of March 8, 2013 – her final day of work at Honeywell.   Alternatively, it argues that, even assuming Plaintiff could perform her job with a reasonable accommodation, Honeywell was unable to properly evaluate her request because she failed to participate in good faith in the interactive

process.   It also argues that Plaintiff's refusal to work in the Molding Department could not be a reasonable accommodation because it would force Honeywell to rewrite the essential functions of her job.

The ADA prohibits discrimination against a "qualified individual" on the basis of disability.   42 U.S.C.  §  12112(a).   Such discrimination includes the failure to reasonably accommodate the known physical or mental limitations of an "otherwise qualified individual with a disability."   42 U.S.C. § 12112(b)(5)(A).   The ADA defines a "qualified individual" as one who, with or without reasonable accommodation, can perform the essential functions of her job.   42 U.S.C. § 12111(8).   Generally stated, a failure to accommodate claim requires a plaintiff to show that: (1) she is disabled within the meaning of the applicable law; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer knew of her disability but did not reasonably accommodate it upon a request.   Henry v. United Bank, 686 F.3d 50, 59-60 (1st Cir. 2012) (citing Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 (1st Cir. 2010)).

In Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 799 (1999), the Supreme Court considered the issue of whether the application for and receipt of SSDI benefits judicially estops an ADA claimant from proving the essential element that she can perform the essential functions of her job with a reasonable accommodation.   In order to qualify for SSDI benefits, an individual must have a physical and/or mental impairment(s) that prevents her from doing her previous work and "any other kind of substantial gainful work which exists in the national economy."   42 U.S.C.  §  423(d)(2)(A).   Despite recognizing the appearance of inherent conflict between these two standards, the Supreme Court concluded that a negative presumption in favor of estoppel was not warranted.   526 U.S. at 802.   Rather, the Supreme Court held that when a trial court is faced with an ADA plaintiff's previous sworn statement asserting total disability, it should require an explanation from the plaintiff of any apparent inconsistency with the necessary elements of an ADA claim.   Id. at p. 807.   "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the

earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"   Id.[2]

Here, it is undisputed that Plaintiff did not raise any concerns about working in the Molding Department until late February 2013.   She met with representatives of Honeywell on Thursday, March 7, 2013 and Friday, March 8, 2013, to discuss her concerns.   Honeywell requested a doctor's note on March 7, 2013 which was provided by Plaintiff on March 8, 2013.

The doctor's note was dated March 4, 2013 and authored by Plaintiff's treating psychiatrist, Dr. James Greer.   The note reads as follows:

> Ms. Pena is a patient under my care at this agency where she has received both counseling and medication services.   Currently she is reporting exacerbation of her anxiety symptoms which are interfering with her ability to function.   She reports that these specifically occur when she is being sent to the moulding room as opposed to the more typical duties to which she is accustomed.   I am requesting that you assist her in other placements than in this setting as her condition is being directly exacerbated by working conditions there.
>
> She is completely capable of working in other settings.
>
> I would be happy to provide more details should you require it.

Following the submission of this note, the parties engaged in a fairly lengthy dialogue as to Plaintiff's condition and the requested accommodation.   The parties dispute the sufficiency of this "interactive"[3] process.   It is undisputed that Plaintiff did not work during this process and performed no work at Honeywell after March 8, 2013 through her termination by Honeywell on June 17, 2013, purportedly for job abandonment.

---

[2]    In Rogers v. Wal-Mart Stores East, No. 1:06-CV-84, 2008 WL 552841 at *6 (E.D. Tenn. Feb. 26, 2008), the Court hypothesized that a plaintiff who could only perform a job with a reasonable accommodation but without that accommodation could not perform any job, would qualify for both ADA protection and SSDI benefits.

[3]    The ADA regulations provide that "[t]o determine the appropriate, reasonable accommodation, it may be necessary for the [employer] to initiate an informal, interactive process"…"to identify the precise limitations resulting from the disability and potential reasonable accommodations…."   29 C.F.R. § 1630.2(o)(3).   (emphasis added).

It is also undisputed that Plaintiff subsequently applied for and received SSDI benefits retroactive to March 8, 2013 based on her sworn representation that she was disabled from working as of that date. However, in the context of this ADA litigation, Plaintiff contends that she would have been able to continue working if granted the reasonable accommodation of not being assigned to the Molding Department. In fact, Dr. Greer's March 4, 2013 letter notes that Plaintiff is "completely capable of working" in settings other than the Molding Department. Thus, these undisputed facts create the facial appearance that Plaintiff has claimed that she is and is not disabled from working at the same relevant time period.

Pursuant to the Supreme Court's decision in Cleveland, this contradiction triggers a plaintiff's requirement to present an explanation. 526 U.S. at 807. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that despite the assertion of total disability, Plaintiff could nonetheless perform the essential functions of her job at Honeywell with or without reasonable accommodation. Id. See also DeCaro v. Hasbro, Inc., 580 F.3d 55, 62-63 (1st Cir. 2009) (applying Cleveland and holding that it was within trial court's discretion to instruct jurors, inter alia, that a "plaintiff is not permitted to say one thing in applying for disability benefits and another thing, entirely the opposite, in seeking damages for [disability] discrimination").

Plaintiff alleges, in this case, that Honeywell failed to reasonably accommodate her disabilities. Plaintiff asserts that Honeywell was aware of the nature of her disabilities. She then claims that Honeywell violated the law by denying her request that she not be assigned to the Molding Department and later terminating her employment.

Plaintiff attempts to explain the apparent inconsistency in three ways. First, she argues that there is a fundamental difference between being disabled under the ADA and being disabled for the purpose of receiving SSDI benefits. She argues that the "most salient difference" is that the ADA takes into consideration a claimant's need for a reasonable accommodation of a disability, while the SSA does not. (ECF Doc. No. 33-1 at p. 38). Second, Plaintiff contends that the statements made in her SSDI Application were true and accurate at the time she made them. Id. at p. 36. She asserts that when she made that

-12-

statement in September 2013 after exhausting all efforts to obtain a reasonable accommodation from Honeywell, her sworn assertion to the Social Security Administration that she was "unable to work" on March 8, 2013 and "still disabled" was in fact true and accurate.   Id. at p. 39.   Finally, Plaintiff asserts that she would have been able to continue working at Honeywell if she were not denied a request for a reasonable accommodation, and that she "should not have to choose between obtaining disability benefits so she can feed herself and vindicating important civil rights under the ADA."   Id. at p. 36.

The Cleveland decision requires Plaintiff to adequately explain the apparent contradiction created by her position in this ADA litigation that she would have been able to continue working on or after March 8, 2013 if reasonably accommodated by Honeywell and her position in the SSDI process that she was too disabled to do any work as of March 8, 2013.   To defeat Honeywell's Motion for Summary Judgment, the Supreme Court has held that the explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in the earlier statement [of total disability], the plaintiff could nonetheless perform the essential functions of her job, with or without reasonable accommodation."   526 U.S. at 807.

This is a sympathetic case, and Plaintiff was clearly facing difficult personal circumstances when she applied for SSDI benefits in September 2013.   There is also no indication that she has taken any positions in bad faith.   However, examining the factual record and her present explanation in its entirety, I conclude that no reasonable juror could reconcile her position in this ADA litigation with her position in the SSDI process.   See Rogers, 2008 WL 552841 at *6 (applying Cleveland and recognizing the possible circumstance where a plaintiff could qualify for protection under the ADA as someone who can only satisfy the requirements of a particular job with a reasonable accommodation but also be eligible for SSDI benefits because, without that accommodation, the plaintiff could not satisfy the requirement for any job).   Thus, Cleveland instructs that this Court enter summary judgment for Honeywell because Plaintiff was not a qualified individual with a disability on or after March 8, 2013.

Some further explanation is warranted.   Plaintiff commenced this litigation on or about April 16, 2015 alleging denial of a reasonable accommodation, as well as disability discrimination and retaliation. (ECF Doc. No. 1-1).   Her prayer for relief seeks, inter alia, compensatory damages including lost wages[4] and benefits, as well as an order requiring Honeywell to reinstate her in the position she would have occupied but for its discriminatory and/or retaliatory treatment.  Id. at p. 17.   Plaintiff's position in this litigation has consistently been that excusing her from work in the Molding Department as an accommodation as she asked in late February/early March 2013 "should have put this matter to bed immediately."  (ECF Doc. No. 33-1 at p. 4).   In other words, Plaintiff asserts that she was able to perform the essential functions of the manufacturing job she historically performed for Honeywell if it granted her request for reasonable accommodation, i.e., to not be assigned to the Molding Department.   (ECF Doc. Nos. 5 at p. 2 and 33-1 at p. 19).   In fact, Dr. Greer, her treating psychiatrist, made clear in his March 4, 2013 note that Plaintiff was "completely capable of working in other settings."   (ECF Doc. No. 28-1 at p. 37).[5]

Plaintiff's position in this litigation is irreconcilably at odds with her Application for and receipt of SSDI benefits.   On September 26, 2013, Plaintiff applied for SSDI benefits.   In her SSDI Application, Plaintiff stated that she became unable to work because of her disabling condition on March 8, 2013 and is still disabled.   When asked at her deposition if the statements meant that she was unable to do any work, Plaintiff responded "yes, at that time when I stated that, yes, because I was under a lot of medications, and my depression increased."   (ECF Doc. No. 28-2 at p. 29).   She also agreed that since March 8, 2013 she

_____

[4]   In her Interrogatory Response, Plaintiff claims lost wages from March 2013 to present.   (ECF Doc. No. 28-7 at p. 8).   The Responses were signed by Plaintiff on November 24, 2015, after she had been awarded SSDI benefits retroactive to March 8, 2013 but before she had actually received payment of such benefits.   Id. at p. 9.

[5]   On April 2, 2013, Dr. Greer noted that Plaintiff was "eager to return to work in her previous capacity." (ECF Doc. No. 33-2 at p. 5).   On April 23, 2013, her attorney, Ms. Kot, advised that Plaintiff was "more than willing to perform work with accommodations as specified by [Dr. Greer]."   Id. at p. 26.   Finally, on May 6, 2013, Ms. Kot stated that Plaintiff was "in fact able and available for work – with accommodation – as she had been for the past many years."   Id. at p. 31.   Plaintiff testified that she sought out Ms. Kot shortly after leaving work on March 8, 2013 because she wanted to "get back to my regular job."   (ECF Doc. No. 34-2 at p. 20).

-14-

had been unable to perform any work.   Id. and ECF Doc. No. 34-2 at p. 24.   On October 16, 2015, a Social

Security Administrative Law Judge considered Plaintiff's SSDI Application and concluded that Plaintiff

was disabled within the meaning of the Social Security Act since March 8, 2013.   (ECF Doc. No. 28-2 at

pp. 52-56).   The ALJ cited Section 223(d) of the Social Security Act (42 U.S.C. § 423(d)) which defines

disability as the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment.   The claimant must be not only unable to do his or her

previous work but also any other kind of substantial gainful work which exists in the national economy,

regardless of whether such work exists in the immediate area, or whether a specific job vacancy exists, or

whether she would be hired if she applied for the work.   Id.   This has been accurately described by courts

as a "high burden."   See, e.g., Wilson v. Colvin, C.A. No. 2:14-CV-00157-KOB, 2015 WL 661185 at *15

(N.D. Ala. Feb. 17, 2015); and Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

       This is not a case where the plaintiff took the position that she needed a reasonable accommodation

to perform work and would not satisfy the requirements of any job without that accommodation.   Rather,

Plaintiff here took the position on March 8, 2013 and thereafter that she could not work in the Molding

Department but was "completely capable of working in other settings."   (ECF Doc. No. 33-2 at p. 3).

Applying Cleveland, I conclude that no reasonable juror could reconcile that position with her Application

for and receipt of SSDI benefits with a disability onset date of March 8, 2013, and thus Plaintiff has not

presented an explanation sufficient to defeat summary judgment.   Accordingly, I recommend that

Defendant's Motion for Summary Judgment (ECF Doc. No. 27) be GRANTED as to Counts I through VIII[6]

of Plaintiff's Amended Complaint.

---

       [6]   Counts I through VIII of Plaintiff's Complaint present failure to accommodate and disability
discrimination claims which require a threshold showing that Plaintiff was a qualified individual with a disability at
the relevant time.   See Hatch v. Pitney Bowes, Inc., 485 F. Supp. 2d 22, 34-35 (D.R.I. 2007) (holding that Title I of
the ADA "excludes [from protection] those who, at the time of the alleged discriminatory act, are unable to perform
the essential functions of employment."   Counts IX through XII present retaliation claims which do not face the same
threshold hurdle.   Id. at p. 35.

If the Court does not accept this recommendation as to judicial estoppel on Counts I through VIII, I have also considered Honeywell's alternative arguments for summary judgment.   Reviewing the record in a light most favorable to Plaintiff, I conclude that she has sufficiently identified genuine issues of fact for trial as to her reasonable accommodation claims (Counts I through IV) but not as to her discriminatory discharge claims (Counts V through VIII).   As to reasonable accommodation, the issues of whether rotation to the Molding Department was an essential function of Plaintiff's job and whether Plaintiff participated in good faith in the interactive process present factual determinations on this record which preclude summary judgment.   However, as to her disability discrimination claims, Plaintiff has simply not presented any competent evidence from which a reasonable juror could conclude that her June 17, 2013 termination for job abandonment was in fact motivated by discriminatory animus.   Plaintiff effectively concedes in her Statement of Undisputed Facts that Honeywell had a legitimate business reason to cross-train its employees to work in the Molding Department.   (ECF Doc. No. 36 at ¶ 3).   She also concedes that some employees expressed their dislike of the Molding Department because of the pace of work and reduced opportunity to socialize.   Id. at ¶¶ 6-7.   Accordingly, it is not surprising that Honeywell would closely scrutinize a request to be excused from assignment to the Molding Department.

While reasonable minds might ultimately disagree as to whether that cross-training and rotation to the Molding Department was an essential function of Plaintiff's former job and whether excusing Plaintiff from the Molding Department was a reasonable accommodation, there is no indication that Honeywell's business decision was in any way personal to Plaintiff or motivated in any way by her particular work history or disabilities.   In the end, Plaintiff's refusal to work in the Molding Department and request for reasonable accommodation conflicted with Honeywell's business decision to require all employees to rotate into the Molding Department when needed.   At the time, Plaintiff believed she had supplied sufficient medical information to support her accommodation request, and Honeywell believed that more clarifying information was needed.   While this conflict ultimately led to Plaintiff's separation from employment, it does not support an inference that the separation for job abandonment was motivated by

-16-

discriminatory animus.   It simply presents a legal and factual issue as to whether Honeywell satisfied its duty of reasonable accommodation.   Accordingly, if the Court rejects this recommendation and concludes that Plaintiff has presented an explanation sufficient to satisfy the <u>Cleveland</u> test, I would alternatively recommend that Honeywell's Motion for Summary Judgment (ECF Doc. No. 27) be DENIED as to Counts I through IV but GRANTED as to Counts V through VIII.

      **B.**      **The Retaliation Claims**

Plaintiff's remaining claims (Counts IX through XII) allege that she was unlawfully subject to retaliation for protected activity, <u>i.e.</u>, reports of "unlawful conduct" she made to the Human Resources Department at Honeywell.   The rubric for consideration of such a claim is well established.   To establish unlawful retaliation, a plaintiff must prove that (1) she engaged in protected activity; (2) she experienced an adverse employment action after or contemporaneous with such activity; and (3) there was a causal connection between the protected activity and the adverse employment action.   <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 25 (1st Cir. 2004).   Under Title VII and RIFEPA, it is unlawful to discriminate in any manner against any individual because he has opposed any practice forbidden by such anti-discrimination statutes.   <u>See</u> 42 U.S.C. § 2000e-3(a); R.I. Gen. Laws § 28-5-7(5).   Similarly, RIWPA makes it unlawful to discriminate against an employee because he reports verbally, or in writing, to his employer or supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of any state or federal law or regulation.   <u>See</u> R.I. Gen. Laws § 28-50-3(4).   While Plaintiff "need not establish that the conduct she opposed was in fact" unlawful discrimination, she must demonstrate "a good faith, reasonable belief that the underlying conduct violated the law."   <u>Moberly v. Midcontinent Commc'n,</u> 711 F. Supp. 2d 1028, 1044 (D.S.D. 2010) (citation omitted); see also <u>Krasner v. HSH Nordbank AG</u>, 680 F. Supp. 2d 502, 520 (S.D.N.Y. 2010).   "[P]laintiff's burden under this standard has both a subjective and an objective component."   <u>Murphy v. City of Aventura</u>, 616 F. Supp. 2d 1267, 1282 (S.D. Fla. 2009) (plaintiff must not only subjectively believe in good faith that his employer engaged

in an unlawful employment practice, but also his belief must be objectively reasonable in light of the facts and record presented).

Honeywell disputes that Plaintiff made any reports of "unlawful conduct" to it that would constitute protected activity.   In addition, it argues that Plaintiff has not presented sufficient evidence to support a causal connection between such reports and any claimed adverse employment actions.   In her Memorandum in Opposition, Plaintiff identifies the protected activity as a "complaint" she made to Mr. Gouveia on February 21, 2013 that her supervisor, Ms. Fermin, was not allowing her to take breaks on time at 9:00 a.m. and 12:00 p.m. to eat as necessitated by her diabetes.   (ECF Doc. No. 33-1 at p. 47; Affidavit of Mayra Pena, ¶ 9).   From Mr. Gouveia's notes, it reasonably appears that this was a routine scheduling issue that Mr. Gouveia discussed with Plaintiff and was willing to address.   (ECF Doc. No. 33-2 at p. 57). Plaintiff also identifies the adverse employment action in her Memorandum in Opposition as her June 17, 2013 termination.   (ECF Doc. No. 33-1 at p. 47).

Here, Plaintiff has presented no evidence upon which a reasonable juror could conclude that her June 17, 2013 termination was causally related to her February 21, 2013 conversation with Mr. Gouveia about her break schedule.   In her Memorandum in Opposition, Plaintiff relies solely on temporal proximity to prove causation and argues that courts have found that a three- to four-month period such as in this case is "sufficient."   (ECF Doc. No. 33-1 at p. 47).   She cites to the First Circuit's decision in Calero-Cerezo, 355 F.3d at 25, as support.   However, she miscites the case.   The Calero-Cerezo decision actually states that "three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."   Id.   (emphasis added).

Moreover, putting aside temporal proximity, the record belies that Plaintiff's single complaint on February 21, 2013 about her break schedule motivated Honeywell's termination decision nearly four months later.   After that February conversation, the dialogue between Plaintiff and Honeywell was singularly focused on the issue of her assignment to the Molding Department.   It is undisputed that neither Plaintiff nor her attorney ever responded to Honeywell's letter dated May 22, 2013 requesting further

information and suggesting a conversation between Dr. Greer and Dr. Jennison.   It is also undisputed that Honeywell received no communication from Plaintiff or her attorney after May 6, 2013, and that Plaintiff had long ago exhausted her available medical leave.   Honeywell waited until June 17, 2013 to terminate Plaintiff's employment for job abandonment.   Plaintiff has presented no evidence upon which a reasonable juror could draw any causal connection between that decision and her February 21, 2013 "complaint" to Mr. Gouveia about her break schedule.   Accordingly, I recommend that Defendant's Motion for Summary Judgment (ECF Doc. No. 27) be GRANTED as to Counts IX through XII of Plaintiff's Amended Complaint.

**Conclusion**

For the foregoing reasons, I recommend that Honeywell's Motion for Summary Judgment (ECF Doc. No. 27) be GRANTED as to all Counts[7] of Plaintiff's Amended Complaint.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt.   See Fed. R. Civ. P. 72(b); LR Cv 72(d).   Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.   See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


   /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 22, 2017

---

[7]   As noted supra, if the Court declines to accept this recommendation as to judicial estoppel on Counts I through VIII, I alternatively recommend that Honeywell's Motion for Summary Judgment (ECF Doc. No. 27) be DENIED as to Counts I through IV but otherwise GRANTED.